**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JUAN D. VEGA, JR., *Plaintiff-Appellant*, | No. 13-35311 |
| v. | D.C. No. 2:11-cv-00632-RSM |
| UNITED STATES OF AMERICA; PIONEER HUMAN SERVICES, DBA Pioneer Fellowship House Residential Reentry Center, AKA Pioneer Industries Inc., a WA Corporation; HEATHER MCINTYRE, in her official capacity as Counselor of Pioneer Fellowship House Residential Reentry Center, and in her individual capacity; BERNADETTE MATHIS, in her official capacity as Counselor of Pioneer Fellowship House Residential Reentry Center, and in her individual capacity; KRISTEN CORTEZ, in her official capacity as Counselor of Pioneer Fellowship House Residential Reentry Center, and in her individual capacity; STEPHANIE JONES, in her official capacity as Counselor of Pioneer Fellowship House Residential Reentry Center, and in her individual capacity; DONALD JACKSON, in his official | OPINION |

capacity as Pioneer Fellowship House Residential Reentry Center Home Confinement Coordinator/Center Discipline Committee Chairperson, and in his individual capacity; WILLIAM BROWN, in his official capacity as Manager of the Federal Bureau of Prisons Community Corrections Office in Seattle, Washington, and in his individual capacity; KEVIN STRAIGHT, in his official capacity as employee in the Federal Bureau of Prisons Community Corrections Manager's Office in Seattle, Washington, and in his individual capacity; ORANDA PHILLIPS, in her official capacity as employee in the Federal Bureau of Prisons Community Corrections Manager's Office in Seattle, Washington, and in her individual capacity,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, Chief Judge, Presiding

Argued and Submitted December 4, 2017
Seattle, Washington

Filed February 7, 2018

Before:  Richard C. Tallman and Paul J. Watford, Circuit Judges, and Richard F. Boulware II,* District Judge.

Opinion by Judge Tallman

## SUMMARY**

### Prisoner Civil Rights

The panel affirmed the district court's dismissal of a former prisoner's putative claims brought under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), alleging that private employees of a residential reentry center violated his First Amendment right to court access and his Fifth Amendment right to procedural due process.

The panel declined to expand *Bivens* to include plaintiff's First and Fifth Amendment claims against private employees of a residential reentry center.  The panel held that because neither the Supreme Court nor this Court have expanded *Bivens* in the context of a prisoner's First Amendment access to court or Fifth Amendment procedural due process claims arising out of a prison disciplinary process, the circumstances of plaintiff's case against private defendants plainly presented a "new context" under *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017).  The panel held that

* The Honorable Richard F. Boulware II, United States District Judge for the District of Nevada, sitting by designation.

** This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

plaintiff had adequate alternative remedies for relief against the alleged violations of his First and Fifth Amendment rights by the private defendants. The panel noted that plaintiff could have sought review under the Administrative Remedy Program, the Unit Discipline Committee or could have brought state claims. The panel addressed plaintiff's remaining claims against the federal defendants in a concurrently filed memorandum disposition.

## COUNSEL

Nicole A. W. Abercrbomie (argued) and Jon W. Monson, Cable Huston LLP, Portland, Oregon, for Plaintiff-Appellant.

Teal Luthy Miller (argued), Assistant United States Attorney; Annette L. Hayes, United States Attorney; United States Attorney's Office, Seattle, Washington; for Defendant-Appellee United States William Brown, Kevin Straight, and Oranda Phillips.

Robert L. Bowman (argued) and William F. Knowles, Cozen O'Connor, Seattle, Washington, for Defendant-Appellee Pioneer Human Services.

**OPINION**

TALLMAN, Circuit Judge:

Juan Vega, Jr. was transferred from federal prison to a Seattle non-profit residential reentry center to complete the remainder of his prison sentence. There, he alleged that federal and private employees conspired to remove him from the halfway house known as Pioneer House, ostensibly based on his race and for asserting his First Amendment rights, by filing a false incident report. After his return to a federal detention center based on that incident report, the Federal Bureau of Prisons ("FBOP") reversed the sanction and returned Vega to a reentry program. Vega filed suit alleging violations of his First and Fifth Amendment rights under the implied cause of action theory adopted by the Supreme Court in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), as well as state law claims. The district court refused to allow Vega to amend his complaint a second time and subsequently dismissed all of his claims.

On appeal, Vega contends that the district court erred by (1) dismissing his *Bivens* claims against the federal defendants on qualified immunity grounds, (2) dismissing his *Bivens* claims against the private defendants based on the Supreme Court's holding in *Minneci v. Pollard*, 565 U.S. 118, 120 (2012), (3) dismissing his state law claims, and (4) not permitting him to amend his complaint for a second time. In a memorandum disposition, we address all of Vega's arguments except for whether *Bivens* should be expanded to include access to courts and procedural due process claims against private defendants under the First and Fifth Amendments, respectively. In this opinion we hold that *Bivens* should not be so expanded, and affirm the district court's dismissal.

I

On August 20, 2008, Juan Vega, Jr. was transferred from a federal prison in Oregon to Pioneer House to complete the remainder of his 63-month sentence for misrepresenting a Social Security number and to participate in a community-based, residential drug treatment program. Pioneer House is operated by Pioneer Human Services, a non-profit FBOP contractor, and prisoners assigned to this type of reentry program technically remain in the custody of the FBOP. 18 U.S.C. §§ 3621, 3624(c); 28 C.F.R. § 570.22. Once there, Vega met with Pioneer House Counselor Bernadette Mathis to discuss the reentry center's policies, including the requirement of seeking employment. Vega alleged that he then told Mathis that he had been "medically unassigned and not required to work at any type of job" at his previous place of incarceration.

Vega further alleged that he told Mathis at that meeting that he had five pending *pro se* civil court cases and would be submitting requests to leave Pioneer House to go to the law library of the United States Court of Appeals for the Ninth Circuit or the King County Superior Court. According to Vega, Mathis told him that it was against FBOP and Pioneer House policy to authorize prisoner absences for the purpose of going to a library, including a law library.[1] Vega also asserted that he requested visits from two attorneys whom he had contacted about Pioneer House's refusal to authorize him to visit the two law libraries. Mathis allegedly told him that attorneys are not allowed to visit prisoners at Pioneer House.

---

[1] It is unclear from the record whether Pioneer House has a law library on site.

On September 3, 2008, Mathis prepared a document detailing Vega's individual program plan and goals, which stated that Vega was in the process of seeking a medical waiver from employment. Vega asserted that neither this document, nor a subsequent case note on September 17, indicated that "he was unwilling to obtain employment due to his medical conditions." On September 20, 2008, Vega secured a job at Pioneer Food Services.

On September 17, 2008, Mathis met with Vega and provided a case note document for him to sign. Vega refused. He alleged that on September 24, Mathis told him that if he did not sign the resident case note, she would write him up for "failure to program." Vega then signed the case note, with a notation by his signature that he was signing "under duress." The next day, Vega participated in a telephone conference call with William Brown, Jr., the FBOP Community Corrections Manager, and Pioneer House staff to discuss the incident in which Vega had allegedly refused to sign the case note.

During that conference call, Vega alleged that Mathis and Pioneer House Director Heather McIntyre informed Brown that signing case notes was a program requirement. Vega contended that he was merely attempting to exercise his rights and review a copy of the applicable regulation. According to Vega, Brown stated that he "gave very little weight to" his request for information "because of [Vega's] status as a convicted felon." Brown then told Vega to "follow the rules and program" and warned him not to cause any more problems while at Pioneer House. On October 8, 2008, Vega received a "level advancement" from Pioneer House, which acknowledged that he had complied with all work requirements, paid subsistence, complied with the

necessary drug abuse treatment requirements, and was free of any incident write-ups in the past thirty days.

Vega next alleged that on October 16, 2008, Mathis and McIntyre met with FBOP employees Brown, Kevin Straight, and Oranda Phillips. He asserted, "[a]t that meeting, the aforementioned Defendants, were determine[d] to make an example out of Plaintiff, who is a black male, for his continuous legal actions against the [FBOP] in Seattle, Washington, and [the Pioneer House] in Seattle, Washington, by any means." Vega alleged that "the Defendants designed a plan for [his] removal by writing up a false Incident Report," which "Counselor Mathis was designated as the staff person to write-up[.]" Later that day, Vega received an incident report stating that he had violated a condition of a community program by refusing to obtain employment due to a medical condition. Vega's complaint also alleged that in the incident report, Mathis said that despite prior warnings from Brown to "follow the rules, and work with his counselor to complete necessary programming," on October 16, 2008, "[s]taff became aware that . . . Vega [was] pursuing an active case with the Department of Labor and Industries and [was] scheduled to go to trial this Friday, October 17, 2008." Vega strongly disputes these alleged violations.

On October 17, 2008, two deputy United States marshals removed Vega from Pioneer House and transferred him back to federal prison at the SeaTac Federal Detention Center ("FDC"). At no point prior to this transfer was Vega provided with any opportunity for investigation or a hearing. Five days after the incident and four days after Vega was removed from Pioneer House, Pioneer Human Services employee Donald Jackson notified FBOP that Vega's hearing was postponed to allow for the continuing

investigation into the incident report and in light of Vega's transfer to FDC-SeaTac. On October 21, Pioneer House staff conducted an investigation of the incident report, concluded that Vega had committed a prohibited act of violating a condition of a community program, and recommended that Vega be removed from Pioneer House as a sanction. No evidence was apparently cited in the investigation report. On October 23, Jackson conducted a disciplinary committee hearing.

Jackson's hearing report found that Vega had "committed the prohibited act of Violating a condition of a community program (Code 309). My findings [are] based on the written account of the reporting staff member, which indicated on October 16, 2008 at 1030 hrs. [Pioneer House] staff became aware that [Vega was] pursuing an active case with the Department of Labor and Industries without permission from [Pioneer House] Staff." The report recommended termination at the Pioneer House, in order to "impress upon [Vega] and other residents that this kind of behavior will not be tolerated and that they will be held accountable when they violate FBOP and [Pioneer House] rules and regulations." Ultimately, FBOP officials in the Unit Discipline Committee ("UDC") refused to "certify the incident report because of a lack of evidentiary support," and Vega was returned to a residential reentry facility in Tacoma, Washington, on January 15, 2009.

II

On April 13, 2011, Vega filed a *pro se* complaint against the United States, three federal employees (Brown, Straight, and Phillips), the Pioneer House, and five Pioneer House employees (McIntyre, Mathis, Kristen Cortez, Stephanie Jones, and Jackson) alleging 15 separate counts, including claims for constitutional violations under *Bivens* and several

tort claims under the Federal Tort Claims Act ("FTCA") and Washington law. On September 20, 2011, the district court granted Vega's motion for leave to file an amended complaint. On October 4, 2011, the federal defendants filed a motion to dismiss the amended complaint, which the Pioneer House defendants joined.

On December 2, 2011, the district court issued an order granting in part, and denying in part, the motions to dismiss. Relevant to this appeal, the court: (a) denied the federal defendants' motion to dismiss the *Bivens* claims "on the basis that no government employee was involved in the alleged deprivation of constitutional rights"; (b) denied the Pioneer House employees' motion to dismiss Vega's *Bivens* claims "on the sole basis that they are not federal employees"; (c) granted the federal defendants' motion to dismiss Vega's FTCA claims, to the extent they were predicated on the conduct of Pioneer House and its employees, pursuant to the "contractor" exception under the FTCA; (d) granted the federal and Pioneer House defendants' motions to dismiss Vega's tort claims for false imprisonment, false arrest, malicious prosecution, abuse of process, outrage/intentional infliction of emotional distress, and invasion of privacy; and (e) denied the federal and Pioneer House defendants' motion to dismiss Vega's negligence claim as premature.

On April 26, 2012, the Pioneer House defendants filed a motion for summary judgment seeking dismissal of the remaining claims against Pioneer House and its employees. On May 7, 2012, the federal defendants also filed a summary judgment motion. On November 1, 2012, the district court issued an order granting in part, and denying in part, the defendants' motions, which it construed as motions for judgment on the pleadings. The court granted judgment on

the pleadings dismissing Vega's First Amendment claims against the federal defendants on qualified immunity grounds, but denied the federal defendants' motion as to Vega's Fifth Amendment due process claim. The court also dismissed the remaining claims against the Pioneer House defendants, including Vega's *Bivens* claims, relying on the Supreme Court's ruling in *Minneci*. Additionally, the court granted all of the defendants' motions related to Vega's negligence and discrimination claims under the FTCA and Washington state law.

While the Pioneer House defendants' motion for summary judgment was pending, Vega sought leave to file a second amended complaint. The district court denied the motion, recognizing that leave to amend should be freely given but also that "futility of amendment" is an appropriate basis for denying a motion to amend. The court also concluded that Vega's "fail[ure] to attach his proposed amended complaint to his motion or to articulate how he propose[d] to amend his complaint" made it impossible for the court "to evaluate the propriety of an amendment." *See* Local Rule 15 of the United States District Court for the Western District of Washington (stating that a party who seeks leave to amend a complaint must attach a copy of the proposed amended complaint as an exhibit to his motion and that the motion must make clear how the proposed amended complaint differs from the original). In the following nine months after his motion was denied, Vega never renewed his motion with a proposed amended complaint or explained how he proposed to amend his complaint.

On November 15, 2012, the federal defendants filed a motion for reconsideration of the court's denial of its Federal Rule of Civil Procedure ("FRCP") 12(c) motion with respect to Vega's Fifth Amendment procedural due process claim.

On April 1, 2013, the court granted the motion for reconsideration, dismissing the sole remaining *Bivens* due process claim on qualified immunity grounds.

Vega timely filed this appeal on April 9, 2013. We have jurisdiction under 28 U.S.C. § 1291, and we review *de novo* a district court's grant of a motion to dismiss for failure to state a claim under FRCP 12(b)(6), *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 854 (9th Cir. 2016), as well as for a judgment on the pleadings under FRCP 12(c), *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "[W]e may affirm based on any ground supported by the record." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citing *Papa v. United States*, 281 F.3d 1004, 1009 (9th Cir. 2002)).

III

In *Bivens*, the Supreme Court "recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017) (per curiam) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)). Since *Bivens*, the Court has only expanded this "implied cause of action" twice. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). In *Davis v. Passman*, the Court provided a *Bivens* remedy under the Fifth Amendment's Due Process Clause for gender discrimination. 442 U.S. 228 (1979). In *Carlson v. Green*, the Court expanded *Bivens* under the Eighth Amendment's Cruel and Unusual Punishments Clause for failure to provide adequate medical treatment to a prisoner. 446 U.S. 14 (1980). Otherwise, "the Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity," *Abbasi*, 137 S. Ct. at 1857 (citing *Ashcroft v. Iqbal*,

556 U.S. 662, 675 (2009)), and has consistently declined to expand this limited remedy.**²**

Here, Vega asks us to expand the *Bivens* remedy against private defendants for allegedly violating his First Amendment right to access to courts, as well as his Fifth Amendment right to procedural due process. Although the district court stated that "*Minneci* clarified that private employees acting under color of federal law cannot be held liable under *Bivens*," *Minneci*'s holding was in fact much more narrow. In *Minneci*, the Court examined whether to expand the *Bivens* remedy to include Eighth Amendment violations allegedly committed by employees of a private prison. 565 U.S. at 120. In declining to do so, the Court relied on the fact that the defendants were private employees and that, unlike federal employees, they were subject to state law tort claims without qualified immunity. *Id.* at 126–31. As such, the Court found that state law provided an adequate, alternative remedy, and declined to extend *Bivens*. *Id.*

In fact, the *Minneci* Court did not completely foreclose applying *Bivens* to private actors. *See id.* at 130 ("[W]e concede that we cannot prove a negative or be totally certain

---

**²** *See Minneci*, 565 U.S. at 120 (an Eighth Amendment suit against prison guards at a private prison); *Wilkie v. Robbins*, 551 U.S. 537, 547–48 (2007) (a due process suit against officials from the Bureau of Land Management); *Malesko*, 534 U.S. at 63 (an Eighth Amendment suit against a private prison operator); *FDIC v. Meyer*, 510 U.S. 471, 473–74 (1994) (a procedural due process suit against a federal agency for wrongful termination); *Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988) (a procedural due process suit against Social Security officials); *United States v. Stanley*, 483 U.S. 669, 671–72 (1987) (a substantive due process suit against military officers); *Chappell v. Wallace*, 462 U.S. 296, 297 (1983) (a race discrimination suit against military officers); *Bush v. Lucas*, 462 U.S. 367, 390 (1983) (a First Amendment suit against a federal employer).

that the features of state tort law relevant here will universally prove to be, or remain, as we have described them."). For the following reasons, however, we decline to expand *Bivens* to include Vega's First and Fifth Amendment claims against private employees of a residential reentry center.

## A

"[T]he first question a court must ask in a case like this one is whether the claim arises in a new *Bivens* context, *i.e.*, whether the case is different in a meaningful way from previous *Bivens* cases decided by this Court." *Abbasi*, 137 S. Ct. at 1864 (internal quotation marks and citation omitted). "[A] case can present a new context for *Bivens* purposes if it implicates a different constitutional right; if judicial precedents provide a less meaningful guide for official conduct; or if there are potential special factors that were not considered in previous *Bivens* cases." *Id.* The Supreme Court has never explicitly recognized a *Bivens* remedy for a First Amendment claim. *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."). *But see Iqbal*, 556 U.S. at 675 ("[W]e assume, without deciding, that respondent's First Amendment claim is actionable under *Bivens*.").

In the Ninth Circuit, however, we have previously held that *Bivens* may be extended to First Amendment claims. In *Gibson v. United States*, we stated that "because plaintiffs have alleged that FBI agents acted with the impermissible motive of curbing [the plaintiff's] protected speech, they have asserted a claim properly cognizable through a *Bivens*-type action directly under the First Amendment." 781 F.2d 1334, 1342 (9th Cir. 1986). *See also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 967 n.4 (9th Cir. 2009) ("This court . . .

has held that *Bivens* authorizes First Amendment damages claims."). But because neither the Supreme Court nor we have expanded *Bivens* in the context of a prisoner's First Amendment access to court or Fifth Amendment procedural due process claims arising out of a prison disciplinary process, the circumstances of Vega's case against private defendants plainly present a "new context" under *Abbasi*.

B

The Supreme Court in *Wilkie* provided a two-step analysis when courts decide whether to recognize a *Bivens* remedy. *See* 551 U.S. at 550. "In the first place, there is the question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Id.* (quoting *Bush*, 462 U.S. at 378). Second, Supreme Court precedent "make[s] clear that a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Abbasi*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18). Here, Vega had adequate alternative remedies at his disposal and we therefore decline to address whether any special factors counsel hesitation. *See generally Minneci*, 565 U.S. at 131.

"[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Abbasi*, 137 S. Ct. at 1858. "Alternative remedial structures" can take many forms, including administrative, statutory, equitable, and state law remedies. In *Abbasi*, the Court stated that the respondents likely had alternative relief in the form of a habeas petition. *Id.* at 1863 ("Indeed, the habeas remedy, if

necessity required its use, would have provided a faster and more direct route to relief than a suit for money damages.").**3**

Here, Vega had alternative means for relief against the alleged violations of his First and Fifth Amendment rights by the private defendants. First, Vega had a remedy "to seek formal review of an issue relating to *any aspect* of his . . . own confinement" under the Administrative Remedy Program ("ARP").**4** 28 C.F.R. § 542.10(a) (emphasis added). *See Malesko*, 534 U.S. at 74. Under that provision, Vega could have sought the assistance of counsel, § 542.16(a), appealed any adverse findings to the Regional Director, § 542.15(a), and then to the FBOP's General Counsel, *id.*

Second, Vega could have sought review of the incident report by the UDC under 28 C.F.R. § 541.7, which is exactly what he ultimately did. During such a review, Vega would be permitted to appear before the board, § 541.7(d), "make a

---

**3** *See also Minneci*, 565 U.S. at 127–30 (state tort law provided alternative means for relief); *Wilkie*, 551 U.S. at 553–54 (state tort law and administrative remedies provided alternative means for relief); *Malesko*, 534 U.S. at 72–73 (state tort law provided alternative means for relief); *Schweiker*, 487 U.S. at 429 (Social Security statutory scheme provided alternative means for relief); *Bush*, 462 U.S. at 385–88 (civil-service regulations provided alternative means for relief).

**4** Although the Court in *Carlson* and *McCarthy v. Madigan*, 503 U.S. 140, 151 (1992), *superseded in part on other grounds by statute,* Prison Litigation Reform Act of 1995, Pub. L. 104–134, 110 Stat. 1321–71, did not recognize the ARP as an adequate, alternative remedy for prisoners, those cases involved violations of a prisoner's Eighth Amendment rights for failing to give proper medical care. In this case, however, the ARP provides an adequate, and more appropriate, remedy to vindicate Vega's rights to access the courts and to procedural due process. Specifically, the ARP could have provided for review of Pioneer House policies or any issue in the disciplinary hearing process and procedure.

statement and present documentary evidence," § 541.7(e), and appeal the UDC's decision through the aforementioned APR, § 541.7(i).   In Vega's case, this review system ultimately resulted in a determination that the evidence was insufficient to show that Vega failed to follow Pioneer House program rules, and he was returned to a residential reentry program in Tacoma, Washington.

Third, Vega had state law claims as an alternative remedy.  In his First Amended Complaint, Vega in fact brought state law claims against the Pioneer House employees under (1) the Washington Law Against Discrimination, RCW 49.60.010, *et seq.*, and for (2) false imprisonment, (3) intentional infliction of emotional distress, and (4) negligence.  Further, Vega asserted additional claims for (5) false arrest, (6) malicious prosecution, (7) abuse of process, and (8) invasion of privacy, under the FTCA.  Although the FTCA does not apply to private employees such as the Pioneer House defendants, *see United States v. Orleans*, 425 U.S. 807, 813–14 (1976), Vega does not contend that he could not have brought those or other state law claims directly under state law.  He merely failed to do so.

That Vega's state law claims ultimately failed to satisfy the requirements of Washington law, or federal pleading standards, does not mean that he did not have access to alternative or meaningful remedies.  *See Minneci*, 565 U.S. at 129 ("State-law remedies and a potential *Bivens* remedy need not be perfectly congruent.").  It simply means that Vega did not adequately plead, or ultimately have, a meritorious claim.  Furthermore, no court has held that the plaintiff's lack of success due to inadequate pleading while pursuing alternative remedies provides a basis for *Bivens* relief.  To do so would require the court to *necessarily* prove

the plaintiff's alternative remedies for him, or be forced to create a new remedy through *Bivens*.

And although Vega contends that "[f]or [him], 'it is damages or nothing,'" the fact that the administrative procedures in place to review sanctions resulted in his return to a residential reentry center belies his claim. Expanding *Bivens* in this context, therefore, seems imprudent given the Court's admonition that "any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie*, 551 U.S. at 550 (citing *Bush*, 462 U.S. at 378).

## IV

In light of the available alternative remedies, we decline to expand *Bivens* in this context. We affirm the district court's dismissal of Vega's putative *Bivens* claims against the private Pioneer House defendants.

Costs are awarded to the private Defendants-Appellees.

**AFFIRMED.**