**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT BOULE,
            *Plaintiff-Appellant*,

v.

ERIK EGBERT; JANE DOE EGBERT,
and their marital community,
            *Defendants-Appellees*.

No. 18-35789

D.C. No.
2:17-cv-00106-
RSM

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, Chief District Judge, Presiding

Argued and Submitted October 7, 2020
Seattle, Washington

Filed November 20, 2020

Before: Susan P. Graber and William A. Fletcher, Circuit
Judges, and Nancy D. Freudenthal,[*] District Judge.

Opinion by Judge W. Fletcher

---

[*] The Honorable Nancy D. Freudenthal, United States District Judge
for the District of Wyoming, sitting by designation.

## SUMMARY[**]

### Civil Rights

The panel reversed the district court's summary judgment for defendants in an action brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), by a United States citizen who alleged that a border patrol agent, acting on plaintiff's property within the United States, violated plaintiff's rights under the First and Fourth Amendments.

Plaintiff owns, operates and lives in a bed and breakfast in the state of Washington, on land which touches the United States-Canada border. Plaintiff alleged that a border patrol agent entered the front driveway of plaintiff's property to question arriving guests, used excessive force against plaintiff, and then, in response to plaintiff's complaints, retaliated against plaintiff by, among other things, contacting the Internal Revenue Service, asking the agency to look into plaintiff's tax status. The district court granted summary judgment to defendants on plaintiff's First and Fourth Amendment claims, holding that they were impermissible extensions of *Bivens*.

The panel held that *Bivens* remedies were available in the circumstances of this case, where a United States citizen alleged that a border patrol agent violated the Fourth Amendment by using excessive force while carrying out official duties within the United States, and violated the First

---

**[**]** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Amendment by engaging in retaliation entirely unconnected to his official duties.

Addressing the Fourth Amendment claim, the panel agreed that it was a modest extension in a new context. However, no special factors counseled hesitation in allowing the *Bivens* action to proceed. The panel held that plaintiff, a United States citizen, brought a conventional Fourth Amendment claim based on actions by a rank-and-file border patrol agent on plaintiff's property in the United States. This context was a far cry from the contexts in *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017), and *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020), in which the Supreme Court found special factors.

Addressing the First Amendment claim, the panel noted that the Supreme Court had not recognized a *Bivens* claim in the First Amendment context and therefore the panel concluded that plaintiff's First Amendment claim arose in a new context. However, no special factors counseled hesitation in extending a *Bivens* remedy under the circumstances. The panel noted that retaliation was a well-established First Amendment claim, available against governmental officers in general, and defendant's alleged retaliation had no relation to, or justification based on, his duties as a border patrol agent. The panel further noted that it appeared that there were no alternative remedies available to plaintiff for either claim.

## COUNSEL

Breean L. Beggs (argued), Paukert & Troppmann PLLC, Spokane; Gregory Donald Boos and W. Scott Railton,

Cascadia Cross-Border Law, Bellingham, Washington; for Plaintiff-Appellant.

Geoff Grindeland (argued) and Nikki Carsley, Seamark Law Group PLLC, Bainbridge Island, Washington, for Defendants-Appellees.

Matt Adams (argued), Northwest Immigrant Rights Project, Seattle, Washington; Mary Kenney, American Immigration Council, Washington, D.C.; Trina Realmuto, American Immigration Council, Brookline, Massachusetts; for Amici Curiae American Immigration Council and Northwest Immigrant Rights Project.

**OPINION**

W. FLETCHER, Circuit Judge:

The Supreme Court first recognized an implied right of action for damages against federal officers in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The Court held that damages were recoverable directly under the Fourth Amendment when federal officers arrested and searched the plaintiff without a warrant or probable cause, and when they employed unreasonable force in making the arrest. *Id.* at 389, 395–96. In the years after *Bivens*, the Court also has recognized implied rights of action for damages under the Fifth and Eighth Amendments. *See Davis v. Passman*, 442 U.S. 228 (1979) (recognizing a damages remedy for a gender discrimination claim against a United States Congressman under the equal protection component of the Fifth Amendment Due Process Clause); *Carlson v. Green*,

446 U.S. 14 (1980) (recognizing a damages remedy against federal prison officials for failure to provide adequate medical treatment under the Eighth Amendment's Cruel and Unusual Punishment Clause).

We are asked to decide whether a *Bivens* damages remedy is available to a United States citizen plaintiff who contends that a border patrol agent, acting on the plaintiff's property within the United States, violated his rights under the First and Fourth Amendments. Although the Supreme Court has made clear that "expanding the *Bivens* remedy is now a disfavored judicial activity," a *Bivens* remedy is still available in appropriate cases and there are "powerful reasons" to retain it in its "common and recurrent sphere of law enforcement." *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1857 (2017) (internal quotation marks omitted).

In considering possible extensions of *Bivens*, we engage in a "two-step inquiry," "first inquir[ing] whether the request involves a claim that arises in a 'new context' or involves a 'new category of defendants'" and then "ask[ing] whether there are any 'special factors that counsel hesitation.'" *Hernandez v. Mesa*, 140 S.Ct. 735, 743 (2020) (citing *Abbasi*, 137 S.Ct. at 1859). Applying this framework, we reverse the district court and hold that Boule may pursue a *Bivens* remedy for his First and Fourth Amendment claims.

## I. Background

Because this case comes before us on an appeal of a grant of summary judgment for Defendant, we draw all reasonable factual inferences in favor of Plaintiff, Robert Boule. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014). We recite the facts viewed through that lens.

Boule is a United States citizen. He owns, operates, and lives in a small bed and breakfast inn in Blaine, Washington. The back property line of the land on which the inn is located touches the United States-Canada border. On March 20, 2014, Customs and Border Patrol Agent Erik Egbert stopped Boule while he was running errands "in town" and asked him about guests staying at the inn. Boule told Egbert that he had a guest arriving that day from New York who had flown in from Turkey the day before. Boule told him that two of his employees were en route to pick up the guest at Seattle-Tacoma ("Sea-Tac") International Airport, about 125 miles south of Blaine. Later that day, Egbert waited in his border patrol vehicle near the inn. The entrance to the inn is on a road at the front of the property. When the guest arrived, Egbert followed the car carrying the arriving guest into Boule's driveway.

Egbert got out of his vehicle and approached the car. From the front porch of the inn, Boule asked Egbert to leave. When Egbert refused, Boule stepped between Egbert and the car and again asked him to leave. Boule recounts that Egbert then shoved him against the car. When Boule still did not move away from the car, Egbert grabbed him and pushed him aside and onto the ground.

Egbert then opened the car door and asked the guest about his immigration status. Boule made a 911 call to request a supervisor, which Egbert also relayed over dispatch. A supervisor and another agent arrived in response to the call. After concluding that the guest was lawfully in the country, the three officers departed. Boule later sought medical treatment for injuries to his back.

After Boule complained to Egbert's superiors about the incident, Egbert retaliated against Boule. Among other things, Egbert contacted the Internal Revenue Service, asking the agency to look into Boule's tax status.

Boule filed a complaint against Egbert in federal district court, seeking damages under *Bivens* for a violation of his First and Fourth Amendment rights. The district court granted summary judgment to Egbert on Boule's First and Fourth Amendment claims, holding that they were impermissible extensions of *Bivens*. Boule timely appealed.

## II. Discussion

We review *de novo* a district court's decision on summary judgment. *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 995 (9th Cir. 2017). We address Boule's Fourth and First Amendment claims in turn, applying the framework established in *Abbasi*, 137 S.Ct. at 1859, and relied on in *Hernandez*, 140 S.Ct. at 743. We ask whether Boule's claims arise in a new context and, if so, whether any special factors counsel hesitation in finding a viable *Bivens* claim. *Id.*

The Supreme Court's understanding of a "new context" in a *Bivens* analysis is "broad." A context is "'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by this Court.'" *Id.* (citing *Abbasi*, 137 S.Ct. at 1859). The Court wrote in *Abbasi*:

> Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one . . . [:] A case might differ in a meaningful way because of the rank of the officers involved; the

> constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

137 S. Ct. 1859–60. The Court cautioned that "even a modest extension is still an extension." *Id.* at 1864.

If we conclude that a claim arises in a new context, we ask "whether there are any special factors that counsel hesitation about granting the extension." *Hernandez*, 140 S. Ct. at 743 (citing *Abbasi*, 137 S. Ct. at 1857). The Court acknowledged in *Abbasi* that it has not defined "special factors," but noted that

> the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed. Thus, to be a special factor counselling hesitation, a factor must cause a court to hesitate before answering that question in the affirmative.

137 S. Ct. at 1857–58 (internal quotation marks omitted). The Court wrote in *Hernandez* that a court should "consider the risk of interfering with the authority of the other

branches" and should "ask whether there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy and whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Hernandez*, 140 S. Ct. at 743 (internal citations and quotation marks omitted).

## A. Fourth Amendment

The district court assumed that Boule's Fourth Amendment claim is a "modest extension" in a new context. We agree that it is a modest extension, given that the Defendant is an agent of the border patrol rather than of the F.B.I. However, we do not find that special factors counsel hesitation in allowing a *Bivens* action to proceed in this new context. Boule, a United States citizen, brings a conventional Fourth Amendment claim based on actions by a rank-and-file border patrol agent on Boule's property in the United States. This context is a far cry from the contexts in *Abbasi* and *Hernandez*, in which the Court found special factors.

In *Abbasi*, the plaintiffs were foreign nationals who had been unlawfully present in the United States. Following the September 11, 2001 terrorist attacks, they were incarcerated by the federal government in harsh conditions. 137 S. Ct. at 1852–53. The F.B.I. had designated each of the plaintiffs as a person "of interest" in the post-attack investigation. *Id.* at 1852. After plaintiffs were released and removed from the United States, they brought a *Bivens* suit against federal executive officials and detention facility wardens, seeking damages based on the conditions of their confinement and the decisions that had led to those conditions. *Id.* at 1851–52. The Court refused to allow a *Bivens* suit, holding that special

factors counseled hesitation in extending *Bivens* in this new context. *Id.* at 1859–61. The Court emphasized that the plaintiffs' claims challenged high-level Executive Branch decisions concerning issues of national security. *Id.* at 1860–62.

In *Hernandez*, the plaintiffs were Mexican nationals whose child had been killed by a United States border patrol agent. 140 S. Ct. at 740. The agent had been on the United States side of the border, the child had been on the Mexico side, and the agent had shot across the border. *Id.* The Mexican government unsuccessfully sought extradition of the agent to Mexico. The U.S. Department of Justice conducted an investigation and declined to bring charges against the agent. *Id.* The Court held that the parents' claims arose in a new context and were precluded by special factors. 140 S. Ct. at 744, 749. The Court noted several "warning flags," including the effect on foreign relations, the implications for national security, and the fact that the harm occurred in another country. *Id.* at 744, 746, 747.

The only aspects of the claim now before us that even tangentially touch on the concerns raised in *Abbasi* and *Hernandez* are that Boule's inn is at the United States-Canada border and that Egbert was investigating the status of a foreign guest who was arriving at the inn. In finding special factors in *Hernandez*, the Court wrote: "[S]ome [border patrol agents] are stationed right at the border and have the responsibility of attempting to prevent illegal entry. For these reasons, the conduct of agents positioned at the border has a clear and strong connection to national security." 140 S. Ct. at 746. However, the contrasts between *Hernandez* and the case before us are self-evident. The agent in *Hernandez* was literally "at the border," tasked with policing the border and

preventing illegal entry of goods and people. *See id.* Though Egbert was very near the border when he injured Boule, he was not policing that border or trying to prevent illegal entry. As Egbert had already been informed by Boule, the arriving guest was coming from Sea-Tac airport after arriving on a flight from New York. Further, the plaintiffs in *Hernandez* were foreign nationals, complaining of a harm suffered in Mexico. Boule is a United States citizen, complaining of harm suffered on his own property in the United States. Finally, the claim in *Hernandez* was extremely unusual. The claim against Egbert is a conventional Fourth Amendment claim, indistinguishable from countless such claims brought against federal, state, and local law enforcement officials, except for the fact that Egbert is a border patrol agent.

The fact that Egbert is a border patrol agent, standing alone, does not preclude a *Bivens* action. Courts in our circuit and elsewhere have allowed *Bivens* actions to proceed against border patrol agents. *See, e.g.*, *Chavez v. United States*, 683 F.3d 1102 (9th Cir. 2012); *Castellanos v. United States*, 438 F. Supp.3d 1120 (S.D. Cal. 2020); *Morales v. Chadbourne*, 793 F.3d 208 (1st Cir. 2015); *Martinez-Aguero v. Gonzalez*, 459 F.3d 618 (5th Cir. 2006). Egbert refers briefly to the burden of litigation and argues that "Congress is in a better position to evaluate the costs and benefits of creating a new legal remedy, which would have far-reaching effects across an entire agency." In earlier *Bivens* cases involving low-level officers, however, we have concluded that the costs of litigation alone do not warrant hesitation. *See Lanuza v. Love*, 899 F.3d 1019, 1029 (9th Cir. 2018) (describing how a "straightforward case against a single low-level federal officer" does not raise concerns about "burden[ing] the Executive Branch to an unacceptable degree").

The Supreme Court cautioned in *Abbasi* that "national-security concerns must not become a talisman used to ward off inconvenient claims—a label used to cover a multitude of sins." 137 S. Ct. at 1862 (internal quotation marks omitted). After the Court's decision in *Abbasi*, we allowed an immigrant to pursue a *Bivens* action against an Immigration and Customs Enforcement attorney who had forged a document in order to prevent his adjustment of status to lawful permanent resident. *Lanuza*, 899 F.3d at 1021. We wrote that although "the Supreme Court has made clear that expanding the *Bivens* remedy is now a disfavored judicial activity," a *Bivens* remedy remains available in appropriate circumstances. *Id.* (internal quotation and citation omitted). We distinguished *Abbasi*, noting that, like Boule in the case before us, the plaintiff did not "challenge high-level executive action" and did not "challenge or seek to alter the policy of the political branches." *Id.* at 1028–29. In a "run-of-the-mill immigration proceeding" where the alien had no ties to terrorism, the case was "unrelated to any other national security decision or interest." *Id.* at 1030. We held that "compelling interests that favor extending a *Bivens* remedy . . . outweigh the costs of allowing this narrow claim to proceed against federal officials." *Id.* at 1033. Here, in a "run-of-the-mill" Fourth Amendment case, we hold that any costs imposed by allowing a *Bivens* claim to proceed are outweighed by compelling interests in favor of protecting United States citizens from unlawful activity by federal agents within the United States.

The claim in *Bivens* itself did not constitute improper intrusion by the judiciary into the sphere of authority of other branches. Nor does the Fourth Amendment claim here constitute such an intrusion. Boule's Fourth Amendment claim is part and parcel of the "common and recurrent sphere

of law enforcement" which, under *Abbasi*, is a permissible area for *Bivens* claims. *Abbasi*, 137 S. Ct. at 1857; *id.* at 1856 ("[I]t must be understood that this opinion is not intended to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose"). We therefore conclude that Boule's Fourth Amendment claim may proceed as a *Bivens* damages claim.

## B. First Amendment

Boule also alleges that Egbert retaliated against him for exercising his First Amendment right to complain to Egbert's superiors about his conduct at the inn. We have previously recognized a *Bivens* claim in the First Amendment context, *see Gibson v. United States*, 781 F.2d 1334, 1342 (9th Cir. 1986), but the Supreme Court has not yet done so. *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."). We consider both Ninth Circuit and Supreme Court precedent in determining whether a claim arises in a new context. *See Lanuza*, 899 F.3d at 1027; *Vega v. United States*, 881 F.3d 1146, 1153 (9th Cir. 2018). But the fact that the Supreme Court has not previously recognized a *Bivens* claim in a particular context is a powerful factor in determining whether the context is new. "If the case is different in a meaningful way from previous *Bivens* cases decided by *this Court*, then the context is new." *Abbasi*, 137 S. Ct. at 1859 (emphasis added); *see also Hernandez*, 140 S. Ct. at 743 (citing this language). We therefore conclude that Boule's First Amendment claim arises in a new context.

However, we find no special factors that counsel hesitation in extending a *Bivens* remedy to this new context. There is even less reason to hesitate in extending *Bivens* here

than in the context of Boule's Fourth Amendment claim. Retaliation is a well-established First Amendment claim, available against governmental officers in general. It is also quite unlike Boule's Fourth Amendment claim. With respect to that claim, Egbert can legitimately argue that his actions at the inn were performed in connection with his official duties. He cannot say the same thing here, for his retaliation had no relation to, or justification based on, his duties as a border patrol agent.

### C. Existence of Alternative Remedies

Finally, we consider whether there are available alternative remedies. When there are available alternative remedies, "a *Bivens* remedy usually is not" available. *Abbasi*, 137 S. Ct. at 1863; *see also Fazaga v. Federal Bureau of Investigation*, 965 F.3d 1015, 1057 (9th Cir. 2020) (describing how we "will not recognize a *Bivens* claim where there is any alternative, existing process for protecting the plaintiff's interests" (internal quotation marks omitted)). The availability of alternative remedies "raises the inference that Congress expected the Judiciary to stay its *Bivens* hand and refrain from providing a new and freestanding remedy in damages." *Fazaga*, 965 F.3d at 1057 (internal quotation marks omitted). We recognize that "[a]lternative remedial structures can take many forms, including administrative, statutory, equitable, and state law remedies." *Vega*, 881 F.3d at 1154 (internal quotation marks omitted). "[A]n alternative remedy need not be perfectly congruent with *Bivens* or perfectly comprehensive, [but] it still must be adequate." *Rodriguez v. Swartz*, 899 F.3d 719, 739 (9th Cir. 2018) (internal quotation marks omitted), *vacated on other grounds*, 140 S. Ct. 1258.

The district court assumed without deciding that there was no alternative remedy available to Boule. On appeal, Egbert "merely mentions the possibility [of Boule being able to seek a trespass claim], without fleshing it out with any citations to [Washington] law. And it appears that the Westfall Act [Pub. L. No. 100-694, 102 Stat. 4563 (1988)] would bar such a claim." *Rodriguez*, 899 F.3d at 741. Egbert also suggests that a Federal Tort Claims Act ("FTCA") remedy would be available. However, the FTCA does not provide redress for constitutional violations. *See* 28 U.S.C. § 2679(b)(2)(A) (excluding the remedy provided in § 2679(b)(1) from applying to "civil action[s] against an employee of the Government…which [are] brought for a violation of the Constitution of the United States"). Indeed, the Supreme Court has explicitly refused to recognize the FTCA as a substitute for a *Bivens* action. *Carlson*, 446 U.S. at 19–20 (recognizing a *Bivens* remedy even where the plaintiff may have been eligible to recover under the FTCA). Therefore, it appears that there are no alternative remedies available to Boule.

## Conclusion

We conclude that *Bivens* remedies are available in the circumstances of this case, where a United States citizen alleges that a border patrol agent violated the Fourth Amendment by using excessive force while carrying out official duties within the United States, and violated the First Amendment by engaging in retaliation entirely unconnected to his official duties. We reverse and remand for further proceedings.

**REVERSED** and **REMANDED.**