**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARCELLAS HOFFMAN,
      *Plaintiff-Appellant*,

v.

PRESTON,
      *Defendant-Appellee*,

and

D. COYLE; MATEVOISAIN, Warden;
L. T. HAYES; FIELDS, SIA
Investigator,
      *Defendants.*

No. 20-15396

D.C. No.
1:16-cv-01617-
LJO-SAB

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted February 8, 2021
San Francisco, California

Filed February 28, 2022

Before:  Kim McLane Wardlaw and Carlos T. Bea, Circuit Judges, and Lee H. Rosenthal,[*] District Judge.

Opinion by Chief District Judge Rosenthal;
Dissent by Judge Bea

---

## SUMMARY[**]

---

### Prisoner Civil Rights

The panel reversed the district court's dismissal of an action brought by federal prisoner Marcellas Hoffman alleging that correctional officer Timothy Preston labeled him a snitch to other prisoners, offered them a bounty to assault Hoffman, and failed to protect him from the predictable assault by another prisoner.

Hoffman sued Preston for violating his Eighth Amendment rights and sought damages under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  The district court dismissed the action on the grounds that Hoffman's claim presented a new *Bivens* context, and that special factors cautioned against extending the *Bivens* remedy to Hoffman's claim.

Construing the pro se complaint liberally, the panel held that Hoffman's complaint alleged conduct beyond deliberate

---

[*] The Honorable Lee H. Rosenthal, Chief United States District Judge for the Southern District of Texas, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

indifference. Preston did not merely know of a risk of substantial harm; he intentionally and knowingly created the risk. Although this claim of intentional harm was not squarely presented in the Supreme Court's *Bivens* opinions, Hoffman's allegations taken as true were only a modest extension of *Bivens*. Citing *Carlson v. Green*, 446 U.S. 14 (1980), the panel reasoned that if the Supreme Court allowed a guard who is aware of and deliberately indifferent to a substantial risk that a prisoner will suffer medical harm from an asthma attack to be sued under *Bivens*, it was but a modest extension to allow a suit against a guard who creates the substantial risk of harm and then allows it to occur.

While Hoffman's Eighth Amendment claim was different in some respects from the Eighth Amendment claim presented in *Carlson*, no special factors counselled hesitation against what was a very modest expansion of the *Bivens* remedy to this context. The panel noted that Hoffman would likely not be able to obtain damages from Preston in a state-law tort suit given that the Westfall Act accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties. Here, the Department of Justice had represented that if Hoffman were to bring a state-law tort suit against Preston, it was likely the United States would certify that Preston acted within the scope of employment. Even if the question did reach a state court, it would be unclear at best whether that court would find that Preston acted within the scope of his employment.

If Preston was immune under the Westfall Act, Hoffman would instead be able to bring a claim against the United States under the Federal Tort Claims Act. The availability of a remedy under that Act would not foreclose a parallel *Bivens* suit, because the threat of suit against the United

States was insufficient to deter the unconstitutional acts of individuals.

The panel further held that an injunction, a habeas grant, or other prospective relief was also inadequate to cure the harm Hoffman already suffered.  Hoffman's claim did not seek to reform prison management; he did not bring a claim against an entity, and he did not seek to enjoin or require a particular prison policy.  Hoffman sought damages for the harm caused to him by the targeted actions of one rogue prison official.

The panel agreed with the Third Circuit "that congressional silence in the PLRA about the availability of *Bivens* remedies" did not suggest that Congress intended to make such remedies unavailable.  *Bistrian v. Levi*, 912 F.3d 79, 92-93 (3d Cir. 2018).  Finally, allowing this *Bivens* claim to proceed did not risk an undue impact on governmental operations systemwide.

Dissenting, Judge Bea stated that the Supreme Court has made crystal clear that the days of freely implying damages remedies against individual federal officials under *Bivens* are at an end.  This should have been a straightforward affirmance of the district court's judgment.  The Supreme Court has never recognized a remedy for such actions under *Bivens*, and multiple "special factors" demonstrated that Congress, and not the judicial branch, is vested with the authority to decide whether to extend a damages remedy against federal officials for the Eighth Amendment intentional harm claim presented here.  And, to date, Congress has affirmatively decided not to extend the specific damages remedy requested in this case.

**COUNSEL**

Laura E. Dolbow (argued) and David M. Zionts, Covington & Burling LLP, Washington, D.C.; Samuel Weiss, Rights Behind Bars, Washington, D.C.; for Plaintiff-Appellant.

Philip A. Scarborough (argued), Assistant United States Attorney; McGregor W. Scott, United States Attorney; United States Attorney's Office, Sacramento, California; for Defendant-Appellee.

**OPINION**

ROSENTHAL, Chief District Judge:

Marcellas Hoffman, a federal prisoner, alleges that a correctional officer, Timothy Preston, labeled him a snitch to other prisoners, offered them a bounty to assault Hoffman, and failed to protect him from the predictable assault by another prisoner. Hoffman sued Preston for violating his Eighth Amendment rights and sought damages under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Although we recognize that the Supreme Court has "made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity," the Court has also made clear that a remedy may be available for a case arising in a new *Bivens* context, so long as "special factors [do not] counsel[] hesitation." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857, 1859, 1865 (2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). In *Carlson v. Green*, 446 U.S. 14, 18–20 (1980), the Court recognized a *Bivens* remedy for a violation of the Eighth Amendment prohibition on cruel and unusual punishment. While Hoffman's Eighth Amendment claim is different in some respects from the

Eighth Amendment claim presented in *Carlson*, no special factors counsel hesitation against what is a very modest expansion of the *Bivens* remedy to this context. We therefore reverse the district court's Rule 12(b)(6) dismissal of Hoffman's *pro se* complaint for failure to state a claim under *Bivens*, and remand for further proceedings.

## I.

This appeal comes to us on a motion to dismiss, so we recount the facts as set out in the complaint. *See Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011) (on a Rule 12(b)(6) motion, "[t]he facts alleged in a complaint are to be taken as true" (citing *Iqbal*, 556 U.S. at 679)).

## A.

Marcellas Hoffman was housed at U.S. Penitentiary Atwater, where he worked as a cook. The prison's warden, food administrator, and food service assistant approved Hoffman's proposal to reduce waste in the food-service department. Hoffman alleges that Timothy Preston, a Bureau of Prisons correctional officer at Atwater, was upset by the proposal and wanted Hoffman removed from the kitchens. In February 2016, Preston told another correctional officer, in front of Hoffman and other prisoners, that "inmates are snitching in the staff dining hall and writing officers['] names down who are not paying for meals." Hoffman responded, "I am not snitching on no one, if you are talking about me." A heated verbal exchange between Hoffman and Preston ended when Preston put Hoffman in a

holding cell.  Preston later moved Hoffman to the Special Housing Unit.[1]

According to Hoffman's complaint, over the following months, Preston repeatedly and publicly labeled Hoffman a snitch.  Preston told other prisoners that Hoffman was reporting both staff and prisoners for not paying for meals; made it clear that he wanted Hoffman kicked out of the kitchens; and offered a bounty to specific prisoners to harm him.  These actions worked their intended, predictable result: on May 16, 2016, another prisoner, Emmanuel Ward, assaulted Hoffman in his cell.  Ward punched Hoffman in the face, kicked him in the stomach, and smashed his head into a locker.  Hoffman alleges that Ward attacked him "as a direct result" of Preston labeling Hoffman a snitch.  Hoffman has since been transferred to a different prison, but he continues to receive threats from prisoners and staff because of the reputation as a snitch that Preston started and continued.

## B.

This case has a complicated procedural history.  Hoffman filed his first complaint *pro se* on October 27, 2016.  With leave of court and still proceeding *pro se*, he amended the complaint on April 11, 2019.  The amended complaint states claims against Preston for retaliation and cruel and unusual punishment, in violation of the First and

---

[1] Preston also filed an incident report about the verbal exchange accusing Hoffman of threatening to "whoop [Preston's] ass."  At the disciplinary hearing, Hoffman admitted swearing at Preston but denied threatening him.  Officer DeCarie, who witnessed the incident, testified that Hoffman did not make a threat.  The disciplinary charge was changed from "Threatening Bodily Harm" to the lesser charge of "Insolence Towards a Staff Member."

Eighth Amendments.  Only the Eighth Amendment claim survived the screening required under the Prison Litigation Reform Act ("PLRA").  28 U.S.C. § 1915A(a).  On July 18, 2019, Preston moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Hoffman had failed to state a valid Eighth Amendment claim under *Bivens*.[2]

On October 11, 2019, the magistrate judge recommended granting the motion to dismiss, explaining that under the Supreme Court's decision in *Abbasi*, there were only three cases "in which the Court has approved of an implied damages remedy under the Constitution itself": *Bivens*, *Carlson*, and *Davis v. Passman*, 442 U.S. 228 (1979).  *Abbasi*, 137 S. Ct. at 1854–55.  Of those cases, only *Carlson* involved a claim under the Eighth Amendment's cruel and unusual punishment clause.  Because that claim was "for failure to provide medical care," *id.* at 1864, the judge concluded that it "differ[ed] meaningfully" from Hoffman's claim.  The judge framed Hoffman's claim as deliberate indifference to the risk of, or failure to protect from, an attack by another prisoner.

The magistrate judge rejected Hoffman's argument that the Court recognized a *Bivens* remedy for failure-to-protect claims in *Farmer v. Brennan*, 511 U.S. 825 (1994), because *Farmer* was not one of the three cases listed in *Abbasi*.  *See Abbasi*, 137 S. Ct. at 1854–55.  After deciding that Hoffman's claim presented "a new *Bivens* context," *id.* at 1859, the judge concluded that special factors—the availability of other remedies, legislative action by Congress, and the impact on government regulation—

---

[2] Preston did not claim qualified immunity or dispute that the facts alleged stated an Eighth Amendment violation.

cautioned against extending the *Bivens* remedy to Hoffman's claim. *See id.* at 1860.

On January 6, 2020, the district court adopted the magistrate judge's findings and recommendations in full and dismissed the action with prejudice. Hoffman timely appealed.

## II.

The district court had jurisdiction over Hoffman's *Bivens* claims under 28 U.S.C. § 1331. We have jurisdiction over Hoffman's appeal of the district court's dismissal under 28 U.S.C. § 1291.

We review the district court's dismissal for failure to state a claim de novo. *Dougherty*, 654 F.3d at 897. We take all allegations of material fact in the complaint as true and ask if they "plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). *Pro se* complaints are construed liberally and "held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted).

## III.

Before determining whether a *Bivens* remedy is available for Hoffman's Eighth Amendment claim, we address the precise nature of that claim. The district court examined whether a *Bivens* remedy was available for Hoffman's claim that Preston violated the Eighth Amendment through his alleged deliberate indifference to Hoffman's health and safety as a prison inmate. Hoffman alleged in his complaint that "Defendant Preston was deliberate in difference [sic] when [Preston] offered to pay other inmates to harm [Hoffman] for writing and submitting a Food Service

Proposal and for claiming that [Hoffman was] reporting that staff were not paying for meals," and that "Defendant Preston was deliberate indifference [sic] to the potential harm that Plaintiff would receive by offering other inmates a reward to harm [Hoffman] and have [Hoffman] removed from the kitchen."  District Dkt. 42, at 5–6.

Hoffman's complaint, however, does not allege that Preston was merely indifferent to his harm.  Instead, Hoffman alleges that Preston took affirmative steps to target Hoffman for harm by repeatedly and publicly labeling him a snitch and offering a reward to other inmates to harm him.  Hoffman alleges that "Preston was supposed to protect [Hoffman] from inmate assaults, but he instead *encouraged* the inmates to harm Plaintiff and offered to pay them to doit [sic]."  District Dkt. 42, at 6 (emphasis added).  Hoffman also alleges that "Preston violated [his] right to be free from intentional harm caused by [Preston]."  *Id.* at 5.

We construe *pro se* complaints liberally and "afford the petitioner the benefit of any doubt." *Hebbe*, 627 F.3d at 342.  A generous approach is not required to read Hoffman's complaint as alleging conduct beyond "deliberate indifference."  "Deliberate indifference" would mean that Preston failed to protect Hoffman from a known risk of substantial harm.  Preston did not merely *know* of a risk of substantial harm; he intentionally and knowingly *created* the risk.  Although this claim of intentional harm is not squarely presented in the Supreme Court's *Bivens* opinions, Hoffman's allegations taken as true are only a modest extension of *Bivens*.  If the Supreme Court has allowed a guard who is aware of and deliberately indifferent to a substantial risk that a prisoner will suffer medical harm from an asthma attack to be sued under *Bivens*, it is but a modest extension to allow a suit against a guard who creates the

substantial risk of harm and then allows it to occur.  We find no special factors that counsel against allowing a *Bivens* remedy in this context.  We reverse.[3]

## A.

In *Bivens*, the Supreme Court recognized, for the first time, an implied cause of action arising directly under the Constitution for damages against federal officers alleged to have violated a plaintiff's constitutional rights.  403 U.S. at 389.  The *Bivens* Court specifically held that damages were recoverable against federal officers who violated the Fourth Amendment's prohibition against unreasonable searches and seizures.  *Id.*  In the following decade, the Court explicitly extended the *Bivens* remedy in two other cases: *Davis* recognized an implied damages claim under the Fifth Amendment's due process clause for gender discrimination by a member of the United States Congress, 442 U.S. at 230; and *Carlson* recognized an implied claim under the Eighth Amendment's cruel and unusual punishment clause for prison officials' failure to provide adequate medical care, 446 U.S. at 16–18 & n.1.

In *Abbasi*, the Court instructed lower courts first to determine whether the case presents "a new *Bivens* context" by asking whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme]

---

[3] Preston also urges us to affirm on the ground that Hoffman did not administratively exhaust his claim.  However, Preston did not present this nonexhaustion theory in his motion to dismiss the current operative complaint, and at no point in the litigation did he previously raise a nonexhaustion defense as to Hoffman's "snitch" claim.  Because nonexhaustion was not properly raised before the district court, we do not reach it here.  *See Mansourian v. Regents of Univ. of Cal.*, 602 F.3d 957, 974 (9th Cir. 2010).

Court." 137 S. Ct. at 1859. While not an exhaustive list, some meaningful differences creating a new context include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860. A new *Bivens* context is defined broadly, *see Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) ("*Hernandez II*"), but "trivial" differences do not "suffice to create a new *Bivens* context," *Abbasi* 37 S. Ct. at 1865. If the case falls within a previously established context, the *Bivens* remedy is available. *Id.* at 1859–60; *see also Lanuza v. Love*, 899 F.3d 1019, 1023 (9th Cir. 2018).

If the case presents a new *Bivens* context, the next step is to ask whether "special factors counsel[] hesitation" against allowing the remedy in that context. *Abbasi*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18). The Court has not specified factors to consider, but instead generally instructed lower courts to "concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857–58. "Thus, to be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question

in the affirmative." *Id.* at 1858. This analysis varies depending on the facts, but it often includes considering the availability of alternative remedies, the impact on government operations, and whether "Congress has designed its regulatory authority in a guarded way." *Id.*; *see also Lanuza*, 899 F.3d at 1028.

B.

The facts Hoffman alleges in his Eighth Amendment *Bivens* claim are different than the factual basis of the *Carlson* claim. In *Carlson*, the Supreme Court recognized a *Bivens* remedy against individual prison officials for their "violation of the Eighth Amendment's proscription against infliction of cruel and unusual punishment." 446 U.S. at 17. *Carlson* involved prison officials' failure to provide a severely asthmatic prisoner with adequate medical care. *Id.* at 16 n.1. The prisoner's mother alleged that the officials were "fully apprised" of his condition and yet kept him at a grossly inadequate medical facility, gave him the wrong treatments, and failed to provide competent medical attention for hours after an asthma attack. *Id.* The prisoner died as a result of these acts and omissions. *Id.* The lower courts held that the plaintiff had successfully pleaded an Eighth Amendment violation under *Estelle v. Gamble*, 429 U.S. 97 (1976) and a cause of action for damages under *Bivens*, and the Supreme Court affirmed. *Carlson*, 446 U.S. at 17–18.

Recently, this circuit considered whether *Carlson* created a blanket rule that applied to all Eighth Amendment claims or whether certain Eighth Amendment claims might still present new *Bivens* contexts. In *Martinez v. U.S. Bureau of Prisons*, 830 F. App'x 234, 235 (9th Cir. 2020), a previously incarcerated plaintiff sought a *Bivens* remedy under *Carlson* for an Eighth Amendment claim for

inadequate exercise.    *Martinez*, 830 F. App'x at 235. Although both the claims in *Martinez* and those in *Carlson* arose under the Eighth Amendment, the court affirmed in an unpublished disposition the district court's finding that the *Martinez* claim was a "new context," because the inadequate exercise claim was "demonstrably different in kind . . . from that of *Carlson*."   *Martinez v. Bureau of Prisons*, 5:15-cv-02160, 2019 WL 5432052, at *8 (C.D.C. Aug. 20, 2019); *see also Quintero Perez v. U.S.*, No. 17-56610, 2021 WL 3612108 (9th Cir. 2021) (case involving an officer fatally shooting a Mexican national at the border was "'different in a meaningful way'" from *Bivens*, which involved an officer arresting the plaintiff in, and searching, his home) (quoting *Abassi*, 137 S. Ct. at 1859)).

Hoffman's claim arises in a new context because it is different in a modest way from that of the plaintiff in *Carlson*.    Hoffman alleges that Preston labeled him a "snitch" and offered to pay other inmates to beat him.   The *Carlson* defendants kept the prisoner in an inadequate medical facility, gave him the wrong treatments, and failed to provide competent medical attention for hours after an asthma attack.   446 U.S. at 16 n.1.   The actions of the defendants in both *Carlson* and in the present case caused serious harm to each of the prisoners.   446 U.S. at 16 n.1. The actions are, however, sufficiently different to treat Hoffman's claims as a modest extension beyond *Carlson*. *Martinez*, 830 F. App'x at 235.

## IV.

Having recognized that this claim presents a new *Bivens* context because it involves a factually different Eighth Amendment claim than *Carlson*, we hold that special factors do not counsel hesitation against allowing a *Bivens* remedy for a federal prison inmate alleging that a prison guard

intentionally targeted him for harm and failed to protect him from the predictable harm that resulted.[4]  *See Lanuza*, 899 F.3d at 1028 ("*Abbasi* makes clear that, though disfavored, *Bivens* may still be available in a case against an individual federal officer who violates a person's constitutional rights while acting in his official capacity.").

### A.

A primary special factor counseling hesitation in extending *Bivens* to a new context is the availability of alternative remedies that sufficiently "protect[] the [injured party's] interest."  *Abbasi*, 137 S. Ct. at 1858 (second alteration in original) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).  Other remedies potentially available to Hoffman do not adequately "redress [Hoffman's] alleged harm," and therefore do not caution against expansion.  *See Bistrian*, 912 F.3d at 92; *see also Carlson*, 446 U.S. at 18–19 (*Bivens* remedy is available unless Congress has provided "equally effective" alternative relief).

### 1.

Hoffman would likely not be able to obtain damages from Preston in a state-law tort suit.  The Supreme Court has

---

[4] In *Boule v. Egbert*, 998 F.3d 370, 387 (9th Cir. 2021), we similarly held that special factors did not counsel against the "modest extension" of the remedy to a Fourth Amendment excessive-force claim against a border control agent.  The Supreme Court recently granted certiorari in that case on "whether a cause of action exists under *Bivens* for First Amendment retaliation claims," and "whether a cause of action exists under *Bivens* for claims against federal officers engaged in immigration-related functions for allegedly violating a plaintiff's Fourth Amendment rights."  The border context of that case distinguishes it from the facts alleged here.  The Court notably did not grant certiorari on Egbert's third proposed question: "Whether the Court should reconsider *Bivens*."

already recognized that in suits against federal officers, state-law tort actions do not generally provide an alternative remedy, because under the Westfall Act, "[p]risoners ordinarily *cannot* bring state-law tort actions against employees of the Federal Government." *Minneci v. Pollard*, 565 U.S. 118, 126 (2012) (emphasis in original) (citing 28 U.S.C. §§ 2671, 2679(b)(1)). The dissent argues that despite this general rule, Hoffman can bring a state-law tort suit because Preston was not acting within the "scope of his employment" during the alleged incidents. This argument is inconsistent with the Westfall Act, California state law, and the representations the Department of Justice made in this case on Preston's behalf.

The Westfall Act "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007). When a state-law tort suit is brought against a federal employee for actions taken within the "scope of his office or employment," the United States is substituted as the defendant and the claim must proceed in federal court under the Federal Tort Claims Act. *Id.* at 230; *see* 28 U.S.C. § 2679(d)(4). There are two ways to establish that an employee was acting within the scope of his employment: (a) the Attorney General can so certify, 8 U.S.C. § 2679(d)(1), (2); or (b) if the Attorney General refuses, the employee can petition the trial court for certification, *id.* § 2679(d)(3). The Attorney General's certification is conclusive for removal purposes, *id.* § 2679(d)(2), while a state court's certification can be challenged after the case is removed to federal court, *id.* § 2679(d)(3).

The Department of Justice has represented that if Hoffman were to bring a state-law tort suit against Preston,

"it is likely the United States would . . . certify that Preston acted within the scope of employment." The Attorney General determines that certification is proper based "on an understanding of the facts that differs from the plaintiff's allegations" in the complaint—including a defendant's denial of the underlying incidents. *Osborn*, 549 U.S. at 231. Preston has denied the allegations, and the Attorney General, through his designee, has approved Hoffman's direct representation by the Department of Justice, according to the government's letter brief filed on April 13, 2021. Such a representation is approved only "when the actions for which [Department of Justice] representation is requested reasonably appear to have been performed within the scope of the employee's employment." 28 C.F.R. § 50.15(a).

The Assistant U.S. Attorney has also repeatedly asserted that Hoffman could obtain a remedy under the Federal Tort Claims Act, which would be true only if Preston acted within the scope of his employment during the alleged acts. *See* 28 U.S.C. § 1346(b)(1). As Preston acknowledges, in these circumstances it would be quite odd if the Attorney General did not certify that Preston was acting within the scope of his employment for Westfall Act purposes, should the question arise.

Even if the question did reach a state court, it would be unclear at best whether that court would find that Preston acted within the scope of his employment. An officer's scope of employment for Westfall Act purposes is determined by applying "the principles of *respondeat superior* of the state in which the alleged tort occurred"— here, California. *Saleh v. Bush*, 848 F.3d 880, 889 (9th Cir. 2017) (citation omitted). Under California law, it is "well established" that "an employee's willful, malicious and even criminal torts may fall within the scope of his or her

employment for purposes of respondeat superior," *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 296 (1995) (citations omitted), so long as there is a causal "nexus" between the tortious conduct and the employment, *Xue Lu v. Powell*, 621 F.3d 944, 948 (9th Cir. 2010).

California courts, and federal courts applying California law, have often found that employees were—or could have been—acting within the scope of their employment when they committed intentional torts. *See, e.g.*, *Doe v. Bridges to Recovery, LLC*, No. 2:20-CV-00348-SVW, 2021 WL 1321652, at *3–4 (C.D. Cal. Mar. 8, 2021) (a reasonable juror could find that a medical technician who sexually assaulted a patient was acting within the scope of employment); *Heidari-Mojaz v. Arreguin*, No. CV 20-154-CBM-SHK(X), 2020 WL 6541991, at *2 (C.D. Cal. Sept. 18, 2020) (an employee who punched a customer was acting within the scope of employment); *Xue Lu*, 621 F.3d at 948–49 (an immigration officer who solicited bribes from an asylum applicant and sexually assaulted her acted within the scope of employment); *Mary M. v. City of Los Angeles*, 814 P.2d 1341, 1347–52 (Cal. 1991) (en banc) (finding factual disputes material to determining whether a police officer who sexually assaulted the plaintiff acted within the scope of employment).

If Hoffman were to bring a state-law tort suit, and the Attorney General chose not to certify, the state court might conclude that Preston was acting outside the scope of his employment. But this remote possibility is too flimsy a basis to conclude that a state tort remedy is so obviously "available" to Hoffman that we should hesitate in extending a *Bivens* remedy. *Cf. Pollard*, 565 U.S. at 125–26 (no *Bivens* remedy was available against a privately employed guard working in a federal prison, because a state-law tort claim

was clearly available against the guard, in contrast to a federally employed prison employee).

### 2.

If Preston is immune under the Westfall Act, Hoffman would instead be able to bring a claim against the United States under the Federal Tort Claims Act. 28 U.S.C. § 2679(d)(4). The availability of a remedy under that Act does not foreclose a parallel *Bivens* suit, because "the threat of suit against the United States [is] insufficient to deter the unconstitutional acts of individuals." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 67–68 (2012) (citing *Carlson*, 446 U.S. at 21). In *Carlson*, the Court noted that it is "crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." 446 U.S. at 20; *see also id.* at 23 ("Plainly [the] FTCA is not a sufficient protector of the citizens' constitutional rights, and without a clear congressional mandate we cannot hold that Congress relegated respondent exclusively to the FTCA remedy."). The intervening years have not changed that conclusion. *See Hernandez II*, 140 S. Ct. at 748 n.9 ("Congress made clear that it was not attempting to abrogate *Bivens*" by enacting the Federal Tort Claims Act.); *see also Williams v. Baker*, 487 F. Supp. 3d 918, 929 (E.D. Cal. 2020) ("The Supreme Court has not repudiated its holding that the FTCA 'is not a sufficient protector of the citizens' constitutional rights,' and this court remains bound by it.") (quoting *Carlson*, 446 U.S. at 23).

### 3.

An injunction, a habeas grant, or other prospective relief is also inadequate to cure the harm Hoffman already suffered. *See, e.g.*, *Abbasi*, 137 S. Ct. at 1862 ("[I]ndividual instances of discrimination or law enforcement overreach,

. . . due to their very nature are difficult to address except by way of damages actions after the fact."); *Bistrian*, 912 F.3d at 92 (remedies that "give[] no retrospective relief" do not properly address the harm once a prisoner has been assaulted); *Reid*, 825 F. App'x at 445 (injunctive relief "does nothing to cure the damage [a plaintiff] already suffered"). Injunctive relief would be ineffective for, and unavailable to, Hoffman, as he has been moved to a different facility and is no longer in contact with Preston. *See, e.g.*, *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995).

The dissent argues that the Supreme Court has precluded extending a *Bivens* remedy when any administrative or injunctive relief is, or was, available to the plaintiff—no matter how meaningless that relief would be to address the harm suffered. But the Supreme Court has not taken the approach that the dissent suggests. Instead, the Court has laid out a fact-specific inquiry, recognizing that when the relief sought affects important aspects of prison management, or when the relief is sought to deter entities, rather than individuals, from acting unconstitutionally, the plaintiff should seek an injunction. When the relief is sought to deter individuals from inflicting harm and that relief does not implicate prison policy or management, damages are appropriate. *See Malesko*, 534 U.S. at 74.

In *Malesko*, the Court explained that the availability of administrative and injunctive relief was a factor counseling against extending *Bivens* to an Eighth Amendment claim brought against a private prison operator. A *Bivens* remedy was not a proper vehicle for deterring the acts of an entity, as opposed to the acts of an individual federal officer. Unlike the damages sought against individual federal officers, as in *Carlson* and *Boule* and here, "injunctive relief

has long been recognized as the proper means for preventing entities from acting unconstitutionally." *Id*.

In *Abbasi*, the respondents were former detainees at the Metropolitan Detention Center in Brooklyn, New York under a "hold-until-cleared" policy. 137 S. Ct. at 1852–53. Under the policy, the FBI would hold undocumented persons indefinitely while completing investigations to determine whether the detainees were connected to terrorists. *Id.* After suffering alleged abuse and harsh confinement conditions, the respondents brought two sets of *Bivens* claims against executive officials and wardens at the Detention Center. The *Abbasi* Court's rejection of the *Bivens* claims against the executive officials turned in part on recognizing that injunctive relief, not damages, is the right relief to reform an entity's policies. 137 S. Ct. at 1860. The *Abbasi* remand of the claims against the warden also raised this concern, noting that "an injunction requiring the prison warden to bring his prison into compliance with [the prison] regulations" may have been available. 137 S. Ct. at 1865.

*Carlson* is the one Supreme Court *Bivens* case that has involved claims against individual federal prison guards for their mistreatment of an inmate. The *Carlson* Court did not hold that the availability of some form of injunctive relief counseled against a *Bivens* remedy. The dissent asserts that "it must be emphasized that no injunctive relief was possible in *Carlson*, given that there, the prisoner died, whereas here, Hoffman lives on." Dissent at 43. In *Carlson*, the plaintiff inmate had died from the medical problems that the federal officers had failed to respond to, so the suit was brought by the estate. Hoffman survived the attack by inmates that the federal officer had instigated. But the twin purposes of a damages remedy—to deter the offender and to make the victim whole—are even more effective while the victim

lives. *See Malesko*, 534 U.S. at 70 ("The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations."). The Dissent implies *Carlson* may have had a different outcome had the plaintiff inmate survived, but failure-to-provide-medical-care *Bivens* claims modeled after the claim in *Carlson* are routinely brought and maintained by current and former inmates who are still alive. *See, e.g.*, *Jiau v. Tews*, No. 13-cv-04231-YGR (PR), 2021 WL 2913549, at *8 (N.D. Cal. July 12, 2021); *Van Gessel v. Moore*, 1:18-cv-01478-DAD-GSA-PC, 2020 WL 905216, at *8–9 (E.D. Cal. Feb. 25, 2020); *Lewis v. Ives*, No. 3:18-cv-00184-MK, 2020 WL 2761024, at *5 (D. Or. Feb. 12, 2020); *Harris v. Lappin*, No. EDCV 06–00664 VBF (AJW), 2009 WL 789756, at *1, 10–11 (C.D. Cal. Mar. 19, 2009); *Lictenberg v. United States*, No. 10–00353 SOM–BMK, 2011 WL 322552, at *2 (D. Hawaii Jan. 27, 2011).[5]

Hoffman's claim does not seek to reform prison management. Hoffman does not bring a claim against an entity, and he does not seek to enjoin or require a particular prison policy. Hoffman seeks damages for the harm caused to him by the targeted actions of one rogue prison official.

Finally, the internal BOP grievance process is not a sufficient alternative to a damages remedy under *Bivens*. On its face, the grievance process is not intended as a substitute for a federal suit: the PLRA makes clear that a prisoner may bring a federal action after he exhausts the grievance process. 42 U.S.C. § 1997e(a). The Supreme Court has

---

[5] *See also Chapman v. Santini,* 805 Fed. App'x. 548, 551, 554 (10th Cir. Feb. 13, 2020); *Koprowski v. Baker*, 822 F.3d 248, 249–50, 257 (6th Cir. 2016); *Scinto v. Stansberry*, 841 F.3d 219, 224, 236–37 (4th Cir. 2016); *Whitley v. Hunt*, 158 F.3d 882, 887–88 (5th Cir. 1998), *abrogated on other grounds*, *Booth v. Churner*, 532 U.S. 731 (2001).

acknowledged as much, explaining that "federal prisoners suing under [*Bivens*] must first exhaust inmate grievance procedures." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The purpose of this exhaustion requirement is to "promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court," *id.* at 528 (citation omitted)—*not* to exclude from federal court meritorious claims that cannot be resolved by the grievance process. This makes sense: when a prisoner is physically injured due to an officer's unconstitutional actions, the harm can "only be remedied by money damages," which are not available through the BOP grievance process. *Bistrian*, 912 F.3d at 92 (citation omitted); *see also Bivens*, 403 U.S. at 410 (Harlan, J., concurring) (the remedy is available for cases in which "it is damages or nothing").

## B.

Courts should hesitate to extend the *Bivens* remedy into a new context when "legislative action suggest[s] that Congress does not want a damages remedy." *Abbasi*, 137 S. Ct. at 1865; *see, e.g.*, *Hernandez II*, 140 S. Ct. at 739 ("Congress has been notably hesitant to create claims based on allegedly tortious conduct abroad."). We agree with the Third Circuit "that congressional silence in the PLRA about the availability of *Bivens* remedies" does not suggest that Congress intended to make such remedies unavailable. *Bistrian*, 912 F.3d at 92–93.

The touchstone is whether "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong." *Abbasi*, 137 S. Ct. at 1858. Congress passed the PLRA in 1996, 16 years after the Supreme Court decided *Carlson*. The law did not explicitly create a stand-alone monetary damages remedy against

federal correctional officers, but it did not explicitly disallow one either. *See* 42 U.S.C. § 1997e; *Abbasi*, 137 S. Ct. at 1865. The district court, Preston, and the dissent rely on *Abbasi*'s discussion of the PLRA to conclude that Congress's failure to explicitly provide a damages remedy "precludes an implied remedy." Dissent at 46. But *Abbasi* says only that "[i]t *could be argued*" that the PLRA's failure to provide a stand-alone damages remedy "suggests" that "Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." 137 S. Ct. at 1865 (emphasis added). We do not dispute that this argument can be made, but we find it unpersuasive.

The PLRA "attempts to eliminate unwarranted federal-court interference with the administration of prisons" by "afford[ing] corrections officials time and opportunity to address complaints internally *before* allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (emphasis added) (quoting *Nussle,* 534 U.S. at 525). Congress would have been aware when drafting the PLRA that prisoners were bringing failure-to-protect claims under *Bivens*. *See, e.g.*, *Gillespie*, 629 F.2d 637 (decided 16 years before PLRA enactment); *Farmer*, 511 U.S. 825 (decided two years before PLRA enactment). Congress did not and has not disallowed additional *Bivens* remedies. *See Brown v. Gardner*, 513 U.S. 115, 121 (1994) ("Congressional silence 'lacks persuasive significance.'" (citations omitted)).

Given its general purpose, the PLRA is best read as reflecting congressional "intent to make more rigorous the process prisoners must follow" before bringing a federal damages lawsuit, rather than a desire to prevent prisoners from seeking damages in federal court altogether. *Bistrian*, 912 F.3d at 93. The text supports this conclusion. The PLRA states that "[n]o action shall be brought with respect

to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA slows down the processing of claims until administrative remedies are exhausted; it does not foreclose available remedies after exhaustion is complete, nor is it plausibly read as suggesting that possibility.

The PLRA also provided courts with explicit authority to act without motion to dismiss frivolous and meritless motions:

> The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

42 U.S.C. § 1997e(c)(1). Congress recognized that in some instances, defendants may be immune from monetary relief in suits relating to prison conditions, but Congress did not define when this immunity applies. Other parts of the PLRA specify when attorneys' fees are appropriate, the conditions for recovering mental or emotional damages, the types of hearings required for pretrial proceedings, and when the defendant has waived a reply. 42 U.S.C. § 1997e(d)–(g).

The PLRA's purpose and text lead to the conclusion that it is a statute about process, not the substantive requirements

for relief.  *See Nussle*, 534 U.S. at 524 (requiring PLRA exhaustion for federal prisoners' *Bivens* actions).  The PLRA does not overhaul the remedies available to incarcerated plaintiffs after they satisfy process requirements to seek those remedies.  *Cf. Chappell v. Wallace*, 462 U.S. 296, 304 (1983) (rejecting a *Bivens* claim brought by military personnel when Congress had already enacted a comprehensive scheme for grievances, governing both process and remedies).  No significant meaning can be attributed to the fact that Congress said nothing about the availability or unavailability of monetary damages to incarcerated plaintiffs.  *Cf. AMG Capital Mgmt., LLC v. FTC*, 141 S. Ct. 1341, 1351 (2021) ("[W]hen 'Congress has not comprehensively revised a statutory scheme but has made only isolated amendments . . . [i]t is impossible to assert with any degree of assurance that congressional failure to act represents affirmative congressional approval of [a court's] statutory interpretation.'"); *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific.").

The PLRA does not provide "sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy" here.  *Abbasi*, 137 S. Ct. at 1858 (citation omitted).  Preston suggests no other legislative action that would cause us to hesitate.

## C.

Finally, we agree with the district court that allowing this *Bivens* claim to proceed does not risk an undue "impact on governmental operations systemwide."  *Abbasi*, 137 S. Ct. at 1858.  Generally, "a *Bivens* claim is brought against the individual official for his or her own acts," with the purpose

"to deter the *officer*" from further unconstitutional actions. *Id.* (emphasis in original) (quoting *F.D.I.C. v. Meyer*, 510 U.S. 471, 485 (1994)). As discussed, this case falls squarely within that central *Bivens* purpose and does not threaten judicial overreach into the operation of another branch.

Preston's arguments to the contrary are unavailing. He asserts that Hoffman's claim interferes with internal prison disciplinary proceedings because the alleged constitutional violation is "intertwined" with the disciplinary citation Preston issued to Hoffman. This argument is clearly incompatible with the purpose and history of *Bivens* actions. By Preston's logic, any time a corrections officer initiated a disciplinary matter, no matter how unfounded or retaliatory, a *Bivens* claim would be precluded. This is simply not the kind of interference with other branches that concerned the Supreme Court in *Abbasi*.

This case does not impact national security or raise cross-border concerns that clearly counsel against a *Bivens* remedy. *See Hernandez II*, 140 S.Ct. at 749 ("We have declined to extend *Bivens* where doing so would interfere with the system of military discipline created by statute and regulation, and a similar consideration is applicable here. Since regulating the conduct of agents at the border unquestionably has national security implications, the risk of undermining border security provides reason to hesitate before extending *Bivens* in this field." (internal citations omitted)); *see also Abbasi*, 137 S.Ct. at 186; *cf. Lanuza*, 899 F.3d at 1028–29 (allowing the extension of *Bivens* for a plaintiff whose claim "d[id] not challenge high-level executive action" or "seek to alter the policy of the political branches").

Nor does Hoffman challenge prison administration or policies. Prisoners generally bring three categories of *Bivens* claims: 1) challenges to the conditions of their confinement; 2) challenges to the use of force by prison guards; and 3) claims that officers were deliberately indifferent to the health and safety of inmates. Each of these Eighth Amendment claims can pose separation of powers concerns when the harm caused is the result of broader prison policies and administration, or when a *Bivens* remedy might lead to the alteration of prison policies and administration. As the Supreme Court has emphasized, "[p]rison administration" is "a task that has been committed to the responsibility of [the legislative and executive] branches, and separation of powers concerns counsel a policy of judicial restraint." *Turner v. Safley*, 482 U.S. 78, 84–85 (1987).

The allegations and claim in this case are similar to the second category—alleging excessive force by prison guards—but the allegations are not that a corrections officer used excessive force against an inmate in an attempt to maintain discipline or prison security. The *Bivens* claim here is based on allegations that a corrections officer intentionally harmed the plaintiff by bribing and inciting other prisoners to use force against him. The allegations and claim in this case are also similar to the third category—deliberate indifference—but the allegations are not that the corrections officer failed to protect an inmate from a known harm that the officer himself did not create (like a prisoner's proneness to asthma attacks). The *Bivens* claim here is based on allegations that a corrections officer created the risk of harm and then failed to protect the plaintiff from that harm. The claim, if it were to succeed, would punish the officer for acts certainly prohibited by the prison administration's rules (bribing inmates to inflict harm on other inmates), and it would not insert the court into broad or sensitive areas of

prison administration, such as the way the prison permits officers to use force against inmates or the way the prison houses inmates.

The propriety of this *Bivens* claim is made even clearer when compared to claims by inmates for which courts have permitted a *Bivens* remedy. Recently, the Third Circuit upheld a *Bivens* remedy for an officer's failure to protect a prisoner from a substantial risk of harm at the hands of another prisoner. In *Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018), an inmate, Peter Bistrian, cooperated with two prison officials in a "surveillance operation in which Bistrian secretly passed inmate notes to prison officials." *Id.* at 84. Eventually, due to a slip-up by Bistrian, inmates learned of Bistrian's cooperation. Bistrian "received multiple threats and made prison officials aware of them." *Id.* "Despite [the defendants'] knowledge of the threats against Bistrian, . . . prison officials placed him in the recreation yard where" the inmates whom Bistrian had been surveilling were waiting. Those inmates "proceeded to brutally beat Bistrian," while the officers watched and did not intervene until "the damage was done." *Id.* "Bistrian suffered severe physical and psychological injuries." *Id.*[6]

The defendants argued that separation of powers principles counseled against a *Bivens* remedy, but the court disagreed. *Id.* at 93. The court noted that "Bistrian's claim fits squarely within *Bivens*' purpose of deterring misconduct by prison officials," because "Bistrian's claim challenges

---

[6] In *Bistrian*, the Third Circuit found that a claim for failure to protect an inmate from a known risk of substantial harm does not arise in a new *Bivens* context even when brought by pretrial detainees under the Fifth Amendment. 912 F.3d at 88. This case does not present that question, and we do not reach it.

particular individuals' actions or inaction in a particular incident—the specific decision to place him in the yard with Northington and other prisoners and then to not intervene when he was being savagely beaten." *Id.*

In *Bistrian*, the defendant officers did not provoke the inmates to attack Bistrian, but they knowingly placed him in a situation that they knew would result in harm, and they then failed to protect him from that harm. Hoffman's claim goes one step further, alleging that Preston not only failed to protect Hoffman from a known risk of harm, but also provoked inmates to harm him in the first place. A *Bivens* remedy would do more than ensure that officials do not forgo their responsibility "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S 825, 833 (1994). It would ensure that officials also do not instigate that violence.

The dissent's worry that allowing a *Bivens* remedy in this case will open a floodgate of claims against "countless decisions taken by prison officials," is misplaced. We write far more narrowly. A *Bivens* claim may proceed on allegations that an individual officer intentionally targeted an inmate for harm by spreading malicious rumors about and offering bribes to attack him, the inmate was attacked because of the officer's conduct, and the officer failed to protect the inmate against the known risk of harm that the officer himself created.[7] We take no further, and certainly

---

[7] If, after discovery, there is no evidence supporting that Hoffman's attacker acted because of Preston's conduct, then Hoffman would not have an available *Bivens* claim. There are no allegations that Preston had knowledge of a risk of harm to Hoffman that arose independent of Preston's conduct. *See Farmer*, 511 U.S. at 844 ("[P]rison officials who lack[] knowledge of a risk cannot be said to have inflicted punishment.").

no broader, position on the scope of claims against prison officials that might otherwise warrant a *Bivens* remedy.

In sum, although this case represents a modest extension of *Bivens*, no special factors caution against extending the remedy to encompass this well-established claim, brought against a single rogue officer under the same constitutional provision applied in a well-recognized Supreme Court *Bivens* case. Simply put, "if the principles animating *Bivens* stand at all, they must provide a remedy" here. *Lanuza*, 899 F.3d at 1021.

## V.

For the reasons stated above, the district court's dismissal is **REVERSED and REMANDED** for further proceedings consistent with this opinion.

BEA, Circuit Judge, dissenting:

The Supreme Court has made crystal clear that the days of freely implying damages remedies against individual federal officials under *Bivens* are at an end. "The Constitution grants legislative power to Congress," and so "a federal court's authority to recognize a damages remedy must rest at bottom on a statute enacted by Congress." *Hernandez v. Mesa*, 140 S. Ct. 735, 741–42 (2020). The Court has recognized only three exceptions to this general rule: damages remedies may be implied for the specific claims at issue in *Bivens*, *Davis*, and *Carlson*. But these exceptions are limited to the factual contexts in which they arose, and the lower courts cannot extend them if any "special factors counsel[] hesitation" before intruding on the

separation of powers and acting in the absence of statutory authority. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017).

This should have been a straightforward affirmance of the district court's judgment. We are asked to decide whether a prisoner (Hoffman) may seek damages against a federal prison guard (Preston) who, the prisoner claims, intentionally and deliberately instigated other prisoners to beat him in retaliation for the prisoner's suspected snitching out of the prison guards' theft of prison food by offering to pay other prisoners to beat him. Is that a *Bivens* eligible violation of the Eighth Amendment's prohibition of cruel and unusual punishment? The answer is no. Congress has never enacted a damages remedy against federal prison officials who act as in the allegations in this case, which amount to an Eighth Amendment excessive force claim; the Supreme Court has never recognized a remedy for such actions under *Bivens*, and at least three special factors bar the narrow gate towards extending the *Bivens* remedy to this new context. Unfortunately, my colleagues dismiss the Supreme Court's clear instructions by permitting this case to move forward as a *Bivens* cause of action. The majority prunes partial quotes from *Hernandez* and *Abbasi* to present a veneer of faithfulness to binding precedent. But do not be fooled: their reasoning and conclusions cannot be squared with modern *Bivens* jurisprudence.[1]

While the majority recognizes this case arises in a new *Bivens* context, they err in holding that no "special factors" counsel against implying a new remedy for this Eighth Amendment claim, an Eighth Amendment intentional harm claim that is more than just a "modest extension" of *Carlson*.

---

[1] *See Hernandez v. Mesa*, 140 S. Ct. 735 (2020); *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017).

Congress has determined that a judicially administered damages regime against federal officials in their individual capacity is not the best way to protect the constitutional rights of federal prisoners. The existence of alternative remedies, repeated refusal to extend a damages remedy, and the complex regulatory regime governing prison administration all counsel against extending *Bivens* here.

Because I fear the majority oversteps the constitutional separation of powers and puts our circuit in danger of yet another reversal, I respectfully dissent.

## I. Factual Background

Marcellus Hoffman is a federal prison inmate formerly housed at the U.S. Penitentiary in Atwater, California. Hoffman sued Officer Timothy Preston of the Federal Bureau of Prisons ("BOP") in the U.S. District Court for the Eastern District of California for intentionally instigating other prisoners to attack him. According to the complaint,[2] Preston accused Hoffman in front of other inmates of "snitching" on BOP officers for stealing lunches from the prison cafeteria and offered to pay inmates to beat Hoffman in retaliation for Hoffman's opposition to the thefts. This intentional conduct, motivated by specific intent to harm Hoffman, allegedly caused another inmate to beat Hoffman in his prison cell. The complaint further alleged that Hoffman has continued to receive threats from prisoners and prison officials since transferring to a new prison in Pennington Gap, Virginia, because of Preston's actions.

---

[2] Officer Preston has denied the allegations, but their truth must be assumed because this appeal arises from a ruling on a motion to dismiss. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 967–68 (9th Cir. 2009).

Hoffman claimed that Officer Preston's actions constituted retaliation in violation of the First Amendment and cruel and unusual punishment in violation of the Eighth Amendment. To remedy these alleged violations of his constitutional rights, Hoffman sought a declaratory judgment as well as $100,000 in compensatory and punitive damages and attorneys' fees and costs from Officer Preston in his individual capacity. Only the Eighth Amendment claim is at issue on this appeal because Hoffman did not appeal the dismissal of his First Amendment retaliation claim.

From the outset, Hoffman faced a problem as to the remedies he sought: Congress has never enacted a damages remedy against individual *federal* officials for the violation of constitutional rights as it has against *state* officials in 42 U.S.C. § 1983. Hoffman does not seek damages in this action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq*., by alleging that Preston acted as an agent of the Government. Hoffman also did not allege that Preston acted outside the scope of his employment, and was therefore not protected from liability under state laws by provisions of the Westfall Act, *id.* § 2679. Neither did he attempt to bring California tort law claims against Preston for assault, battery, or defamation. Nor did Hoffman seek prospective injunctive or habeas relief to remedy the reputational harms he allegedly continues to suffer from being labelled a snitch since transferring to a new federal prison facility in Virginia, 18 U.S.C. § 3626. Instead, Hoffman solely asked the court to imply a damages remedy against individual federal officials from the text of the Constitution itself.

The district court adhered to the clear instructions of the Supreme Court's decision in *Abbasi* by refusing to extend a

*Bivens* remedy and dismissed the case. The court began by holding that Hoffman's claim arose in a "new *Bivens* context" because the Supreme Court "has approved of only one *Bivens* damages remedy under the Eighth Amendment—specifically for failure to provide medical care," and Hoffman's claim had nothing to do with inadequate medical care. *See Carlson v. Green*, 446 U.S. 14, 16 n.1, 18–23 (1980). The court rejected Hoffman's argument that the Court had extended *Carlson* through *Farmer*, which "never explicitly stated . . . that it was recognizing an implied *Bivens* Eighth Amendment failure to protect claim." *See Farmer*, 511 U.S. 825.

Next, the district court held that "special factors" counselled against extending a new *Bivens* remedy for Hoffman's intentional instigation claim. First, the court found that Congress had provided for alternative remedies aside from a damages action against individual officials: Hoffman could challenge the conditions of his confinement through the BOP administrative grievance process, seek declaratory and injunctive relief, and seek damages against the Government under the FTCA. Second, Congress had decided *against* creating an individual damages remedy against federal prison officials despite specifically considering the issue in 1996 when enacting the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. Hoffman appealed with the aid of pro bono appellate counsel; our review is de novo. *Vega v. United States*, 881 F.3d 1146, 1152 (9th Cir. 2018).

## II. Separation of Powers & *Bivens*

Our Constitution is exceptional not necessarily because it enumerates individual rights, but because it divides the power to remedy their violations among three independent branches of government. Article I vests Congress with

"legislative Powers" to articulate rights and establish remedies, U.S. CONST. art. I, § 1; Article II renders the President accountable to the national electorate for the sole exercise of "the executive Power," *id.* art. II, § 1; and Article III vests the federal courts with the "judicial Power" to adjudicate rights in "Cases" and "Controversies," *id.* art. III, §§ 1–2. "Without a secure structure of separated powers, our Bill of Rights would be worthless, as are the bills of rights of many nations of the world that have adopted, or even improved upon, the mere words of ours." *Morrison v. Olson*, 487 U.S. 654, 697 (1988) (Scalia, J., dissenting).

The legislative power "is the power to make law." *Patchak v. Zinke*, 138 S. Ct. 897, 905 (2018). Under our constitutional system, "the legislature not only commands the purse, but prescribes the rules by which the duties and rights of every citizen are to be regulated." The Federalist No. 78, at 402 (A. Hamilton) (Cary & McClellan eds. 2001). Congress enjoys broad authority to create rights and remedies and may enforce many enumerated rights "by appropriate legislation." U.S. CONST. art. I, § 8; *id.* amends. XIII, XIV, XV, XXIV, XXVI. The availability of a damages remedy against federal officials also implicates Congress's taxing and spending powers, since such officials may be indemnified against legal expenses and adverse judgments for claims arising out of the scope of their employment. *Id.* art. I, § 7, cl. 1, § 8, cls. 1–2, 5.

The judicial power is "limited to particular cases and controversies" assigned to the federal courts by statute or by the Constitution. *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 223 (1995); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The constitutional bases for jurisdiction—federal question, foreign ministers, admiralty,

diverse citizenship, and disputes between states, U.S. CONST. art. III, § 2, cl. 1—cannot serve as a cause of action for damages against individual officials for the violation of constitutional rights. Instead, plaintiffs alleging an official abuse of power must rely on a statutory cause of action to invoke the aid of the federal courts. *Kokkonen*, 511 U.S. at 377; *see Wheeldin v. Wheeler*, 373 U.S. 647, 652 (1963); *Slocum v. Mayberry*, 15 U.S. (2 Wheat.) 1, 10 (1817). Unlike the historical courts of England which created the forms of action, our courts do not create new laws. *See, e.g.*, F. Maitland, The Forms of Action at Common Law (1936).

From 1789 until 1971, the Supreme Court held firm to the indisputable conclusion that the extension of a damages remedy is an exercise of "legislative power." *Hernandez*, 140 S. Ct. at 742. Without a statute permitting "suits for damages for abuse of power, federal officials [were] usually governed by local law." *Wheeldin*, 373 U.S. at 652. Congress could have provided for a uniform federal statute allowing suits for damages against federal officials for constitutional torts as it had against state and local officials in 42 U.S.C. § 1983. "[B]ut it ha[d] not done so," and it was not up to the federal courts "to fill any hiatus Congress has left in this area." *Id.*

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court broke new ground by recognizing a Fourth Amendment damages remedy for the warrantless search of a residence. The Court implied a novel authority to craft constitutional torts from the statutory grant of federal question jurisdiction, which provided at the time that "[t]he district courts shall have original jurisdiction of all civil actions wherein the matter in controversy . . . arises under the Constitution, laws, or treaties of the United States."

28 U.S.C. § 1331(a); *see Hernandez*, 140 S. Ct. at 741–42. The ostensible driving force behind the decision was nothing more than a general notion of equity, "that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Bivens*, 403 U.S. at 396 (quoting *Bell v. Hood*, 327 U.S. 678, 684 (1946)). The Court has extended *Bivens* only twice in the intervening fifty years: to intentional sex discrimination by a congressman in *Davis v. Passman*, 442 U.S. 228 (1979), and to the failure to provide, through deliberate indifference, adequate medical care to a federal prisoner in *Carlson*.

The Supreme Court has long since returned to the original understanding that the Constitution empowers Congress, not the courts, "to evaluate 'whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government' based on constitutional torts." *Hernandez*, 140 S. Ct. at 742 (quoting *Abbasi*, 137 S. Ct. at 1856). The jurisprudential foundations on which *Bivens* relied—the practice of implying causes of action believed to further the purpose of a statute—has been soundly repudiated as a usurpation of the legislative power. *See id.* at 741–42; *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 67 n.3 (2001) ("[W]e have retreated from our previous willingness to imply a cause of action where Congress has not provided one."); *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001) ("We abandoned that understanding in [1975] . . . and have not returned to it since."). Given these developments, it seems fair to say "that if 'the Court's three *Bivens* cases [had] been . . . decided today,' it is doubtful that [the Court] would have reached the same result." *Hernandez*, 140 S. Ct. at 742–43 (quoting *Abbasi*, 137 S. Ct. at 1856). Only the Court can overrule *Bivens*, *Davis*, and

*Carlson*, and the lower courts are bound to apply them until and unless that decision is made. But the Court has recognized that every step in the direction of *Bivens* is a step away from fidelity to the separation of powers, and has substantially narrowed the circumstances in which the lower courts may proceed down that road.

"When asked to extend *Bivens*, we engage in a two-step inquiry." *Hernandez*, 140 S. Ct. at 743. First, we ask whether the claim arises in a "new context" or involves a "new category of defendants." *Id.* (quoting *Malesko*, 534 U.S. at 68). Claims arise in a "new context" when they are "different in a meaningful way from previous *Bivens* cases decided by this Court." *Id.* (quoting *Abbasi*, 137 S. Ct. at 1859).[3] Second, if the claim does arise in a new context, we ask whether there are "any 'special factors [that] counsel[] hesitation' about granting the extension." *Id.* (quoting *Abbasi*, 137 S. Ct. at 1857). Should the requested extension fail this exacting test, any implied damages remedy against individual federal officials must be denied.

## III. Special Factors Analysis

At the outset, the majority correctly recognizes this case arises in a new *Bivens* context. Therefore, the court must next decide whether an extension of *Bivens* is permissible in the absence of congressional action. *Abbasi*, 137 S. Ct.

---

[3] In characterizing Hoffman's claim as only a "modest extension" of *Carlson*, the majority opinion provides no limiting principles as to what constitutes a "modest" extension as opposed to a "radical" extension. But in truth, these distinctions are immaterial, as under *Abbasi*, *any* extension of *Bivens* demands the same analysis at the second step—are there special factors counseling hesitation against extending the *Bivens* remedy? If any special factors counseling hesitation are present, *Abbasi* demands that *Bivens* should not be extended.

at 1857. In doing so, we must ask whether the power to extend the requested remedy rests with Congress or with the judicial branch. Because the Constitution vests Congress with the authority to enact damages remedies against federal officials, "[t]he answer most often will be Congress." *Id.* Respect for the separation of powers requires the courts to refuse to imply a new remedy "if there are 'special factors counselling hesitation.'" *Id.* (quoting *Carlson*, 446 U.S. at 18).

Without overruling *Bivens*, the Supreme Court has since repudiated the rationales on which that case relied and declared further expansion of *Bivens* to be a "'disfavored' judicial activity." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). The decision to imply a new damages remedy from the Constitution itself is thus no longer guided by the rationales in *Bivens*, but by the "special factors" inquiry commanded at *Abbasi*'s second step.

Whereas the *Bivens* Court rejected state law as an adequate remedy for many constitutional violations, 403 U.S. at 392–95, the Court has since relied on the availability of damages under state tort law to refuse to expand *Bivens* even when the state remedies available are not "perfectly congruent" with those provided by *Bivens. Minneci v. Pollard*, 565 U.S. 118, 129 (2012) (refusing to extend the *Bivens* remedy in *Carlson* to inadequate medical care claim against private prison officials); *Malesko*, 534 U.S. at 72–73 (similar).

Whereas *Bivens* assumed that every wrong requires a remedy, 403 U.S. at 395–96, the Court has long since abandoned the practice of implying judicial remedies from statutes and constitutional provisions that do not expressly provide them. *Hernandez*, 140 S. Ct. at 741–42; *Abbasi*, 137 S. Ct. at 1855–57; *see also Jesner v. Arab Bank, PLC*,

138 S. Ct. 1386, 1402–07 (2018) (refusing to imply a cause of action against foreign corporation for terrorist activities that was not expressly provided for by Congress in the plain text of the Alien Tort Statute).

Relatedly, whereas the *Bivens* Court read congressional silence as to provision of remedies as implicitly permitting the courts to create their own, 403 U.S. at 397, the Court has since refused to imply remedies when Congress has "repeatedly declined to authorize the award of damages" when enacting "statutes addressing related matters." *Hernandez*, 140 S. Ct. at 747 (citing repeated exclusion of liability for official conduct abroad to deny extension of *Bivens* to cross-border shooting); *see also Chappell v. Wallace*, 462 U.S. 296, 300–04 (1983) (citing statutes and regulations establishing the military justice system to deny extension of *Bivens* to suits by military personnel against superior officers). Indeed, the Court has *explicitly refused* to extend *Bivens* in the prison context in part because Congress "had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs" when enacting the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e, and declined to extend a damages remedy against individual prison officials. *Abbasi*, 137 S. Ct. at 1865.

Hoffman's requested extension of *Bivens* fails because multiple "special factors" demonstrate that Congress, and not the judicial branch, is vested with the authority to decide whether to extend a damages remedy against federal officials for the Eighth Amendment intentional harm claim presented in this case. And, to date, Congress has affirmatively decided *not* to extend the specific damages remedy requested in this case.

## A. The Existence of Alternate Remedies

The first "special factor" precluding the extension of a *Bivens* remedy to Hoffman's claim is "the existence of alternative remedies." *Abbasi*, 137 S. Ct. at 1865. "For if Congress has created 'any alternative, existing process for protecting the [plaintiff's] interest,'" then "that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* at 1858 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). For starters, as explained above, Congress has provided for injunctive relief in federal court and administrative relief under BOP's claims process that would have allowed Hoffman to avoid injury by obtaining his transfer beyond Preston's reach before he was attacked, or by seeking other forms of prospective relief. *See id.* at 1863 (noting habeas relief "would have provided a faster and more direct route to relief than a suit for money damages" by requiring immediate improvement of the conditions of confinement). That Hoffman failed to utilize these remedies between February 26, 2016 (the onset of his dispute with Preston) and May 16, 2016 (the date of alleged physical violence against Hoffman) does not permit this court to conclude that an implied *Bivens* remedy is therefore necessarily available. The Supreme Court has repeatedly found that the availability of administrative and injunctive relief precluded the requested extension of a *Bivens* remedy. *See id.* at 1865 (concluding injunctive and habeas relief counseled against extending *Bivens* to a claim of a warden's acquiescence in detainee abuse by prison guards); *Malesko*, 534 U.S. at 74 (finding the availability of injunctive and administrative relief, along with state tort claims, eliminated the need to extend *Bivens* to Eighth Amendment claims for deliberate indifference to medical needs asserted against private prisons as an entity). Moreover, an injunction against Preston could be argued to have a deterrent effect on

such officials by crimping their future ascendency within the bureaucracy.

Next, Congress provided a damages remedy against the Government for prisoners in Hoffman's position under the Federal Torts Claims Act ("FTCA"), which provides for damages suits for intentional torts committed by individual federal officers.  28 U.S.C. §§ 2674, 2680(h).  It is true that the Supreme Court in *Carlson* treated FTCA suits as an inadequate substitute "[b]ecause the *Bivens* remedy is recoverable against individuals . . . [and] is a more effective deterrent than the FTCA remedy against the United States." 446 U.S. at 21.  But the Court has since warned that the coexistence of the FTCA with *Bivens* remedies in established contexts (*i.e.*, *Bivens*, *Davis*, and *Carlson*) "is not a license to create a new *Bivens* remedy in a context we have never before addressed."  *Hernandez*, 140 S. Ct. at 748 n.9. Because Hoffman's claim against Preston for intentional harm arises in a "new *Bivens* context," we cannot simply write off FTCA suits as inadequate and thereby usurp the authority to craft our own remedy from the text of the Constitution itself.  If nothing else, the oft-cited "damages or nothing" rationale from *Bivens* falls flat, given that Hoffman has a damages remedy available to him under the FTCA, such that extending the *Bivens* remedy to this case is not the only means by which Hoffman can obtain damages.  *Bivens*, 403 U.S. at 410 (Harlan, J., concurring).  And moreover, even taking at face value *Carlson's* conclusion that the FTCA alone was an inadequate remedy given the specific facts of that case, it must be emphasized that no injunctive relief was possible in *Carlson*, given that there, the prisoner died, whereas here, Hoffman lives on.

Finally, Congress has left open the possibility that claimants like Hoffman may bring state tort claims against

federal officers like Preston who engage in particularly egregious intentional conduct. The Westfall Act generally bars state tort claims against "any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1).[4] Under California law—which controls in this case because the conduct at issue occurred at a federal prison in California—the scope of employment inquiry turns on whether the tort was "foreseeable," whether the employer's job requirements "engendered" the conduct, and whether the conduct was "not so unusual or startling" that holding the employer liable would be unfair. *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 907 P.2d 358, 362–63 (Cal. 1995) (citations and quotation marks omitted).

Here, Preston allegedly sought to retaliate against Hoffman for reporting Preston and other prison guards for stealing lunches through an indirect use of force that violated BOP regulations.[5] These actions likely amounted to the common law torts of assault and battery. *See, e.g.*, *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 926 (9th Cir. 2001) (recognizing that California law imposes liability

---

[4] To assert Westfall Act immunity, a federal employee sued in tort must deliver the pleadings to his supervisor and, ultimately, to the Attorney General. 28 U.S.C. § 2679(c). If the Attorney General certifies the employee acted within the scope of his employment at the time of the incident from which the claim arose, the court substitutes the United States as defendant. *Id.* § 2679(d)(1)–(2). The scope of employment inquiry is governed by the law of the state in which the conduct is alleged to have occurred. *See Saleh v. Bush*, 848 F.3d 880, 888 (9th Cir. 2017).

[5] *See* 28 C.F.R. §§ 552.20 (prohibiting the use of force except "as a last alternative after all other reasonable efforts to resolve a situation have failed"), 552.22(b) (prohibiting the use of force to "punish an inmate"), 552.22(j) (requiring that all uses of force "be carefully documented").

for police officers who "aided, abetted, counseled or encouraged" battery when such force was unreasonable); *Fluharty v. Fluharty*, 59 Cal. App. 4th 484, 497 (Cal. Ct. App. 1997) (defining battery as "an act which resulted in a harmful or offensive contact with the plaintiff's person" (citation omitted)). Hoffman's allegations would also fit comfortably within the common law action for the intentional infliction of emotional distress even if a fellow inmate had never laid a hand on Hoffman. *See, e.g.*, *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 819 (Cal. 1993) (defining intentional infliction of emotional distress as intentional or reckless "extreme and outrageous conduct" directed at the plaintiff that proximately causes the plaintiff "severe or extreme emotional distress"). And because Preston is alleged to have falsely labeled Hoffman a "snitch" to damage his reputation among other prisoners and prison guards, Hoffman's claim may state a cause of action for defamation. *See, e.g.*, *Shively v. Bozanich*, 80 P.3d 676, 682–83 (Cal. 2003) (defining slander as a "false and unprivileged *oral* communication attributing to a person . . . certain unfavorable characteristics or qualities"). While the scope of employment is necessarily a fact-bound inquiry, there is authority for the proposition that the conduct alleged here falls outside the line. *See, e.g.*, *Lisa M.*, 907 P.2d at 363–67 (holding that although a hospital technician's sexual assault of a patient was enabled by his employment, the tort was not foreseeable and did not arise out of emotions engendered by the job).[6]

---

[6] When asked for additional briefing on the availability of state tort remedies in this case, the Government explained that the Attorney General would likely certify that Preston acted within the scope of his employment pursuant to the Government's standard practice of assuming the truth of a federal officer's denial of the allegations in a

## B. Legislative Action

The second "special factor" precluding an extension of *Bivens* here is "legislative action suggesting that Congress does not want a [*Bivens*] damages remedy." *Abbasi*, 137 S. Ct. at 1865. In the PLRA of 1996, Congress sought to address a backlog in prisoner-initiated litigation by imposing new exhaustion requirements meant to reduce the quantity of federal lawsuits. *See* 42 U.S.C. § 1997e(a), (c). Tellingly, the PLRA did *not* include any damages remedies against federal prison officials although its drafters were well aware of the limited scope of the *Bivens* remedy extended in *Carlson* for the inadequate provision of medical care.

In *Abbasi*, the Supreme Court explicitly noted that "Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs" when enacting the PLRA, but "chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." 137 S. Ct. at 1865. This reasoning precludes an implied remedy for Hoffman's Eighth Amendment intentional harm claim based on allegations of prisoner-on-prisoner violence instigated by a guard. My colleagues cannot escape the fact that Congress implicitly accepted the limited scope of the remedy in *Carlson* (1980) by failing to expand upon it when enacting the PLRA (1996). The majority's allusion to the PLRA's

complaint. (citing *Osborn v. Haley*, 549 U.S. 225, 247 (2007)). But we should not be so quick to cast aside a role for state tort law when such suits are consistent with the Westfall Act. The Attorney General may withdraw a certification if new evidence comes to light, and contrary to the majority opinion's statements suggesting otherwise, the court may override such a certification if the plaintiff sets out allegations capable, if true, of proving the employee acted outside the scope of his employment. *See Saleh*, 848 F.3d at 889.

"general purpose" as merely a procedural statute is unavailing. As the majority itself recognizes, Congress unquestionably had damages remedies on their mind in writing the PLRA, as evinced by 42 U.S.C. 1997e(e), a provision which expressly limits the scope of claims on which a prisoner can recover damages on due to "mental or emotional injury." And to be sure, the PLRA is not merely an "isolated amendment" to an otherwise innocuous law, *AMG Capital Mgmt., LLC v. FTC*, 141 S. Ct. 1341, 1351 (2021), but instead is precisely the type of comprehensive statutory scheme courts should look to "for guidance on the appropriate boundaries of judge-made causes of actions." *Hernandez*, 140 S. Ct. at 747. If the PLRA can be said to have any "purpose," that purpose is clearly to limit the scope of remedies of which a prisoner may avail himself, whether evidenced through the enhanced procedural requirements a prisoner must meet before bringing a claim, or in the limited scope of recovery a prisoner can receive once a claim is properly brought.

And perhaps most fundamentally of all, even if it wanted to do so, how could Congress *disallow* a *Bivens* remedy, as the majority opinion seems to demand in order to give any weight to the PLRA in the context of the special factors analysis? The majority discounts the relevancy of the PLRA in the special factors analysis by observing that while the "law did not explicitly create a stand-alone monetary damages remedy against federal correctional officers, [] it did not explicitly disallow one either." However, as was said long ago: "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). And here, the *Bivens* Court didn't simply say what a run-of-the-mill statute meant—it said what the Constitution *itself* meant. Congress cannot restrict the *Bivens* remedy any more than it could

restrict the Fourth Amendment, upon which *Bivens* is based, or any other constitutional provision. *See, e.g.*, *Dickerson v. United States*, 530 U.S. 428, 436–37 (2000) (overruling a 1968 statute designed to abrogate *Miranda v. Arizona*, 384 U.S. 436 (1966), because "Congress may not legislatively supersede our decisions interpreting and applying the Constitution."). Therefore, the majority errs in holding that "[n]o significant meaning can be attributed to the fact that Congress said nothing about the availability or unavailability of damages under *Bivens*." For all these reasons, legislative action in enacting the PLRA undoubtedly counsels hesitation against expanding *Bivens* to this new context.

## C. Disruptive Intrusion

The third "special factor" precluding an extension of *Bivens* in this case is the "disruptive intrusion by the Judiciary into the functioning of other branches" risked by a damages remedy for intentional harm claims. *Abbasi*, 137 S. Ct. at 1860. By extending a novel *Bivens* remedy for a claim of such sweeping breadth, my colleagues fail to heed the Supreme Court's warning that "a general *Bivens* cure [could] be worse than the disease." *Wilkie*, 551 U.S. at 560–61 (refusing to recognize *Bivens* claim for "retaliatory or undue pressure on a property owner for standing firm on property rights"). The conduct alleged here is serious, and no doubt it is tempting to imagine allowing Hoffman's case to proceed will not create a substantial or recurring imposition upon federal officials. But the intentional harm claim the majority recognizes today will not be limited to these facts in future cases. Rather, the reasoning underlying the majority's new

remedy logically extends to any conduct that demonstrates intent to cause any serious harm to an inmate.[7]

Examining the majority's analysis (and approval) of the Third Circuit's clearly flawed opinion in *Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018) further enforces this conclusion. In that case, no new *Bivens* context was found, and accordingly, the *Bivens* remedy was extended to apply to inmate Peter Bistrian, a prisoner who was brutally assaulted out on the prison yard by vengeful prisoners after he was found out to be involved in a surveillance program in collaboration with prison officials. *Bistrian*, 912 F.3d at 84. That Bistrian was allowed to be out on the yard after being outed as a snitch assuredly meets the "deliberate indifference" standard of *Carlson*, and in any event is reprehensible conduct, just as is the conduct alleged in this case. However, unlike here, Bistrian did not allege a *Carlson*-type *Bivens* claim. Instead, as a pre-trial detainee, Bistrian asserted a novel Fifth Amendment "failure to protect" *Bivens* claim on the theory that such a *Bivens* claims had already been endorsed by the Supreme Court in *Farmer*, even though *Farmer* was decidedly *not* a *Bivens* case, and even though *Farmer* was an Eighth Amendment case, and not a Fifth Amendment case.[8] *Bistrian*, 912 F.3d at 90.

---

[7] The majority opinion implicitly recognizes as much, but instead of viewing this outcome as problematic, they approvingly cite to a multitude of district court cases in this circuit which extend the *Bivens* remedy to factual situations that are materially distinct from *Carlson*, sanctioning what is undoubtedly a massive expansion of *Bivens*. Whereas this case should have marked the end of such unrestrained expansion of *Bivens* in this circuit, it regrettably signals a new beginning for the misguided doctrine.

[8] By *Farmer's* own terms: "This case requires us to define the term 'deliberate indifference,' as we do by requiring a showing that the

Surprisingly, however, the Third Circuit agreed with Bistrian, and accordingly found the facts of that case to present no "new *Bivens* context," purely on the strength of *Farmer's* alleged recognition of a "failure to protect" *Bivens* claims. *Bistrian*, 912 F.3d at 90. This notwithstanding *Abbasi's* clear teaching to the contrary, that the universe of recognized *Bivens* claims consists of only three cases: *Bivens*, *Davis*, and *Carlson*. *Abbasi*, 137 S. Ct. at 1855. By heartily endorsing *Bistrian's* flawed analysis, the majority offers no principled reasons why a subsequent case in this circuit should not also recognize *Farmer's* alleged "failure to protect" *Bivens* claim, thus opening the doors for seemingly *any* such Fifth (as in *Bistrian*) or Eighth (as alleged to have been recognized in *Farmer*) Amendment violation to state a viable *Bivens* claim. Such a holding would be unprecedented, yet I fear that today's majority opinion will lead to that unfortunate, if not inevitable, outcome.

## IV. Conclusion

"The Framers recognized that, in the long term, structural protections against abuse of power were critical to preserving liberty." *Bowsher v. Synar*, 478 U.S. 714, 730 (1986). Insisting on respect for the separation of powers is not formalism for its own sake. Rather, "the Constitution

---

official was subjectively aware of the risk." *Id.* at 829. *Farmer* offered nothing at all about *remedies* for violations of the contested *right* at issue in that case. In addition to the district court below, at least three other district courts have similarly recognized that *Farmer* did not extend *Bivens* to cover "failure to protect" claims. *See Vela v. Christian*, No. 3:20-CV-0990-C (BH), 2021 WL 5701382, at *8 (N.D. Tex. Nov. 5, 2021); *Marquez v. Rodriguez*, No. 3:18-CV-0434-CAB-NLS, 2021 WL 2826075, at *7 (S.D. Cal. July 6, 2021); *Oden v. True*, No. 3:18-CV-600-GCS, 2020 WL 4049922, at *4 (S.D. Ill. July 20, 2020).

protects us from our own best intentions:  It divides power among sovereigns and among branches of government precisely so that we may resist the temptation to concentrate power in one location as an expedient solution to the crisis of the day."  *New York v. United States*, 505 U.S. 144, 187 (1992).  By vesting the legislative power in Congress, the Constitution provides that elected officials subject to democratic accountability and enjoying a broader perspective than the courts will be the ones to balance the costs and benefits of imposing a damages remedy against federal officials within the complex regulatory scheme that governs federal prisons.  *See Abbasi*, 137 S. Ct. at 1856.  In this way, the separation of powers helps to ensure that the "*Bivens* cure" will not be "worse than the disease."  *Wilkie*, 551 U.S. at 561.

Rather than break new ground, the majority should have followed binding precedents of the Supreme Court and our court and left the enactment of such a broad and novel remedy to Congress.  We should not extend *Bivens* to this new context by judicial *ipse dixit* in light of the multiple "special factors" that counsel hesitation.  To be sure, the majority is correct that the alleged conduct here is more morally culpable than that in *Carlson*.  The deliberate indifference of *Carlson* requires only that an "official [be] subjectively aware of the risk," *Farmer*, 511 U.S. at 829, whereas here, Hoffman's claim of intentional harm demands that Preston have acted with specific intent to harm.  However, the Supreme Court does not instruct us to look to the moral culpability of an act when deciding whether to extend *Bivens*.[9]  Instead, when a new *Bivens* context arises,

---

[9] If this were so, the Supreme Court would have decided *Hernandez v. Mesa* differently, as there, the asserted Fourth Amendment claim involved a tragic shooting resulting in death, *Hernandez*, 140 S. Ct.

as here, we are instructed to perform the special factors analysis commanded by *Abbasi* to determine whether the *Bivens* remedy should be extended. For all the foregoing reasons, this is surely not such a case. This case, perhaps more than any other, demonstrates that precisely because "the principles animating *Bivens*" no longer stand in any capacity, *Lanuza v. Love*, 899 F.3d 1019, 1021 (9th Cir. 2018), a *Bivens* remedy cannot be extended to Hoffman's claim consistent with current Supreme Court jurisprudence.

Because the majority's decision usurps the legislative power in direct contradiction of *Abbasi*, I respectfully dissent and would affirm the district court.

---

at 740, whereas the Fourth Amendment claim in *Bivens* itself alleged no physical injury whatsoever. *Bivens*, 403 U.S. at 389–90.